E. E. Edwards, III, Nashville, Tenn., for defendant-appellant.

Michael V. Rasmussen, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Harrison BARHAM, a/k/a Robert Myers, Defendant-Appellant.**

No. 79–3785.

United States Court of Appeals, Fifth Circuit.

Dec. 19, 1979.

Before COLEMAN, Chief Judge, HILL and GARZA, Circuit Judges.

JAMES C. HILL, Circuit Judge.

In 1977, the Supreme Court handed down its decision in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). *Abney* made it clear that the denial of a motion to dismiss an indictment based upon double jeopardy is directly appealable to the circuit court of appeals. It further

appears that, during consideration of the case, the Court addressed the government's contention that, if such denials were held to be immediately appealable, defendants would be encouraged to withhold the filing of motions asserting double jeopardy until trial was about to commence. The denial of the eleventh hour motion would be followed by a notice of appeal, the district court would lose jurisdiction to proceed with the trial, witnesses assembled for the trial would be sent back to their homes, the district judge's trial calendar would be disrupted, and pleas might be bargained by district attorneys unwilling to devote more tax funds to such frustrated trial preparation. The Court's answer to these problems may be found in Footnote 8 of the opinion. It reads:

Admittedly, our holding may encourage some defendants to engage in dilatory appeals as the Solicitor General fears. However, we believe that such problems of delay can be obviated by rules or policies giving such appeals expedited treatment. It is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims of former jeopardy.

431 U.S. at 662 n.8, 97 S.Ct. at 2042 n.8.

In keeping with the maxim that "anything that can happen will happen," this case appears as an emergency matter. Briefly stated, it developed in the following fashion:

(1) Appellant Barham was indicted on charges of aiding and abetting the counterfeiting of Federal Reserve Notes and conspiracy to make, possess, and distribute counterfeit Federal Reserve Notes.

(2) His first trial resulted in a mis-trial when the jury was unable to agree on a verdict.

(3) His second trial resulted in a conviction.

(4) On appeal from that conviction, this Court reversed and remanded the case for a new trial. *United States v. Barham*, 595 F.2d 231 (5th Cir. 1979).

(5) In late October, 1979, appellant filed his written motion for dismissal of the indictment, asserting that a retrial would constitute double jeopardy.

(6) On November 13, 1979, the district judge denied the motion to dismiss, accompanying his order with an extensive memorandum opinion.

(7) The case was then, and is now, scheduled for jury trial in the Northern District of Alabama commencing Monday, November 26, 1979.

(8) On November 16, 1979, appellant filed his notice of appeal to this Court from the order of November 13th denying the motion to dismiss.

(9) Appellant has requested a stay of further proceedings in the district court pending resolution of this appeal.

(10) Appellant is informed that the district judge has declined to stay the proceedings or to postpone the trial.

(11) Appellant now requests that this Court grant an order staying the proceedings in the district court.

The last mentioned motion has been referred to this panel as an emergency matter. Since the pendency of this appeal appears to divest the district court of jurisdiction, *United States v. Hitchmon*, 602 F.2d 689 (5th Cir. 1979) (en banc), if it is not dealt with prior to the date set for the trial in the district court, that trial cannot proceed. Therefore, as suggested in *Abney*, it is appropriate for this Court to consider the merits of the appeal on an expedited basis. While the appeal has not been briefed, the Court has been furnished with memoranda and affidavits from counsel in support of and in opposition to the motion to dismiss the case as filed in the district court, and the initiating judge on this panel has conferred at length with counsel for appellant and for the government in a conference telephone call.

Appellant's contentions as to double jeopardy stem from the asserted misconduct

of the prosecution at the second trial, extensively reviewed in this Court's prior opinion, 595 F.2d at 238–43, together with assertions that such misconduct also occurred at appellant's first trial. Taking appellant's assertions to be true, they are, cryptically stated, as follows: The principal witnesses against appellant were alleged co-conspirators. Prior to their testifying, the government had entered into agreements with them promising more favorable treatment than otherwise might be expected if they testified truthfully in this case. At both the first and the second trials, these witnesses denied that they had received any promises from the government in exchange for their testimony. The government attorneys failed to bring to the Court's attention the fact that this testimony was false and knowingly permitted such false testimony to be given at the trial. The falsity of the testimony was not discovered by appellant's counsel until after the second trial, although it does appear that the government furnished counsel with information from which the truth could have been ascertained.

It is asserted on behalf of appellant that, under an extension of the rule laid down in *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977) and *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), the misconduct of the government in the two trials requires a holding that a further trial would amount to double jeopardy.

In *Lee* and *Dinitz*, the Supreme Court announced that government misconduct during a trial which so prejudices the rights of a defendant that the defendant has no choice but to move for a mistrial is the equivalent of the government's having moved for a mistrial. In contrast to the general rule, where the defendant has been, in effect, forced to move for a mistrial, he is not deemed to have elected to terminate the trial and obtain a later one. Thus, a retrial constitutes double jeopardy.

Obviously, this sequence of events did not occur in the case here under consideration.

Appellant's argument is that, had the truth been known at the time of the asserted misconduct in the first or second trials, he would have been placed in a position where a defense motion for mistrial would have been the sort of "forced" motion contemplated by *Lee* and *Dinitz*. Although he did not move for a mistrial on either occasion, appellant urges that he should now be permitted to claim the same constitutional insulation that he might have then accomplished.

In our view, the double jeopardy contentions of appellant are not supported either by *Lee* or *Dinitz*. Those cases address the double jeopardy implications of a retrial after a mistrial had been ordered on the motion of the defendant. It was held that the mere fact that the defendant had made the motion for mistrial, under compulsion of government misconduct, did not result in an agreement by the defendant that he might be retried. Those cases do not hold that whenever a trial has been tainted by government misconduct, any further trial would amount to double jeopardy. In the final analysis, the latter proposition is the assertion of appellant on this appeal.

█ Appellant also asserts that "the actions of the government against this defendant, taken as a whole, have so violated his right to fundamental fairness and due process of law in violation of the Fifth Amendment as to require dismissal of this case." Such arguments are not reviewable in a direct appeal taken before final judgment. *Abney v. United States*, 431 U.S. at 662–63, 97 S.Ct. 2034.

Accordingly, we find that the appeal taken from the order denying the motion for dismissal on double jeopardy grounds to be frivolous. The appeal, therefore, is dismissed.[1] The Clerk is instructed to issue the mandate *instanter*.

There being no appeal pending before this Court, and jurisdiction being restored to the district court, the motion to stay the proceedings in the district court is denied.

---

1. The final order dismissing the appeal was entered on November 21, 1979.

The memorandum opinion of the Honorable C. W. Allgood, Senior U.S. District Judge, of November 11, 1979, denying the motion to dismiss, is attached hereto as an Appendix and made a part of this opinion.

It is so ordered.

## APPENDIX

## MEMORANDUM OF OPINION AND ORDER

ALLGOOD, Senior District Judge.

This matter is before the Court on certain motions filed by the defendant. The trial which is now scheduled on this indictment is the third which will have taken place in this Court. In order that the present motions may be better understood, it may be helpful to recount some of the history of this case.

Barham was indicted in December, 1977 and charged with aiding and abetting the counterfeiting of Federal Reserve Notes in violation of 18 U.S.C. §§ 2, 471 and 472 and one count of conspiring to make, possess and distribute counterfeit Federal Reserve Notes in violation of 18 U.S.C. §§ 371, 471, 472 and 473. His first trial in February, 1978 which lasted five days, during which his two co-defendants pleaded guilty, ended in a mistrial as to Barham when the jury was unable to reach a verdict. The second trial conducted in April, 1978 also lasted five days and resulted in Barham's being convicted. The United States Court of Appeals for the Fifth Circuit reversed, and thus, for the third time, this matter will go before a jury in this district. The Fifth Circuit based its reversal upon certain uncorrected false testimony given by three government witnesses, Diane Beech, Jerry Beech, and Joey Shaver, each of whom admittedly were involved in the counterfeiting scheme. Though both the prosecutor and the defense counsel had equal access to information[1] showing that the witnesses were untruthful, neither of them called the false testimony to the attention of the Court or the jury. The trial in large part boiled down to a "swearing match" between the two sides. The Beeches, together with Joey Shaver and other government witnesses, told one story deeply involving Barham in the counterfeiting scheme. Defense witnesses including Barham, his co-defendant David Simon and another individual painted a picture of Barham as an innocent bystander unknowingly enlisted in aid of the scheme by his close and trusted friend David Simon. Thus, the trial became a deadly serious version of the old television game show "Who Do You Trust?" It was critical to the government's case that the jury believe the testimony of Diane Beech, Jerry Beech and Joey Shaver. Defense counsel tried to discredit their testimony. In doing so he inquired into any promises of leniency which might have been made to them. Mrs. Beech was simply untruthful when she denied on cross-examination that she had been promised anything in return for her testimony. Mr. Beech was evasive in failing to review the promises made to him. His evasions were made more meaningful and thus more important in this case by several unfortunate questions put to him by the prosecutor though the court is con-

---

1. At some point during the first trial a copy of a letter from the United States Attorney for the Middle District of Tennessee to the prosecutor in this case documenting certain promises made to the witnesses in that district was delivered to defense counsel by the prosecutor. That letter in pertinent part read as follows:

The witness, Diane Beech, has been told by the attorney for the government in the Middle District of Tennessee that she would not be prosecuted for violations prior to the date of her statement over which we had jurisdiction provided she gave truthful testimony concerning all aspects of the investigation. To our knowledge she has provided truthful testimony to date.

The witness, Joey Shaver, has been advised that he will be prosecuted for one felony violation growing out of his counterfeit activities. He has also been told that his cooperation will be made known to the sentencing judge. Mr. Shaver has, of course, been advised that his failure to testify truthfully on any matter would void the agreement.

The same statements made to Mr. Shaver were also made to Mr. Beech.

Special agents of the Secret Service conveyed the promises to Mrs. Beech and the promises to Mr. Beech and Mr. Shaver were made by myself in the presence of Secret Service Agents who will be able to testify if that matter becomes relevant.

vinced the questions were quite innocently put. The effect of these questions was to emphasize that no promises had been made to Beech by prosecutors in the Northern District of Alabama perhaps leaving the impression with the jury that no promises had been made anywhere. Shaver untruthfully denied that he had been promised anything in return for his testimony.

This testimony heard by the jury, if not outright lies, certainly conveyed the false impression that none of these three witnesses had received any promises of leniency or other considerations. The government must bear, and in fact has borne, a substantial portion of the responsibility for this false impression having been given the jury. However, defense counsel should bear his fair share of the responsibility. As set forth in Footnote 1, *supra*, at the time the testimony of the three witnesses was given, defense counsel had in his files a copy of the letter from the United States Attorney for the Middle District of Tennessee setting out promises made to the witnesses. He offered as an excuse before the appeals court the explanation that he did not discover the letter until after the second trial because it "was a carbon copy on plain onionskin paper, containing the body of the letter but not bearing the letterhead of the United States Attorney's Office, and was thus inconspicuous among all the other discovery documents." The appeals court charitably characterized counsel's conduct as "inexcusable."

Now, the defendant has moved the court to dismiss the indictment on double jeopardy ground alleging "bad faith" on the part of the government. Specifically he alleges that it was bad faith on the part of the government prosecutor which prompted his failure to correct the false testimony of the Beeches and Shaver. He also alleges that it was bad faith which prompted federal officials in the United States District Court for the Western District of Tennessee to indict him for conspiracy to violate the counterfeiting laws. That indictment was subsequently dismissed by order of the United States Court of Appeals for the Sixth Circuit on double jeopardy grounds on February 23, 1979.

The motion to dismiss is not well taken and should be DENIED. Cases cited by the defendant in support of his motion are not apropos. Both *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) and *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977) deal only with mistrials necessitated by judicial or prosecutorial over-reaching. They do not deal with new trials after reversal. The court of appeals in this case characterized the prosecutor's conduct as unfortunate. It recognized that conduct to have been in the heat of battle while it enjoyed the luxury of study and reflection. Had it felt otherwise it was free to order a dismissal. 28 U.S.C. § 2106. This court is convinced that the prosecutor was not motivated by any desire or effort to unfairly deprive the defendant of any right. With regard to the indictment in the Western District of Tennessee, it need only be said the defendant gained that to which he was entitled, namely a dismissal.

Ordinarily where one who has been convicted successfully seeks review of that conviction there is no double jeopardy upon a new trial. *Francis v. Resweber*, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947), *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The Constitution only forbids a second trial when it is for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. Thus, where a conviction is reversed because of insufficiency of the evidence, retrial violates the double jeopardy clause. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). However, where the cause for reversal is error at trial, there is no double jeopardy impediment to retrial. *United States v. Ball, supra, Burks v. United States, supra.* The motion to dismiss will be DENIED.

Defendant's remaining motions may be disposed of quickly. The motion to require the government to produce documents relating to the defendant's indictment in the

Western District of Tennessee will be DE-NIED in view of the disposition of the double jeopardy claim here. The government has informally agreed to supply the defendant with the identity of the government agents who negotiated agreements with witnesses Diane and Jerry Beech and Joey Shaver. That motion will be GRANT-ED. Defendant has moved the court to require the government to disclose favorable evidence. To obtain such information the defendant should properly make a request directly to the government. There is no occasion for the court to involve itself until such time as it is shown that the government has failed or refused to reveal any such information.

Finally, it should be noted that this case was reversed by the United States Court of Appeals for the Fifth Circuit on May 16, 1979. The indictment in the Western District of Tennessee was ordered dismissed by the Sixth Circuit of Appeals on February 23, 1979. The jury for the third trial in this matter was selected on Monday, November 5, 1979, yet the motion to dismiss in this case was not filed until Thursday, November 1, 1979. The amendment to that motion together with an affidavit and memorandum of law in support thereof were all filed on November 5, 1979. The discovery motions were also filed on November 5, 1979.

In accord with the above, it is hereby ORDERED:

(1) That the motion to dismiss be and the same hereby is DENIED.

(2) The motion to require the government to disclose the names of agents who negotiated agreements with the witnesses Beech, Beech and Shaver is GRANTED, and the government is directed to supply such information within five (5) days of the date of this Order.

(3) The motion to require the government to disclose evidence favorable to the defendant is DENIED.

DONE, this the 13th day of November, 1979.