**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Harrison BARHAM a/k/a Robert Meyers, Defendant-Appellant.**

No. 79–5711
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1980.

Rehearing Denied Oct. 23, 1980.

E. E. Edwards, III, Nashville, Tenn., for defendant-appellant.

J. R. Brooks, U.S. Atty., Michael V. Rasmussen, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before CHARLES CLARK, VANCE and SAM D. JOHNSON, Circuit Judges.

CHARLES CLARK, Circuit Judge:

James Harrison Barham appeals from his conviction for counterfeiting and for conspiring to make, possess, and pass counterfeit in violation of 18 U.S.C. §§ 471 and 371 (1976). This trial is Barham's third for these offenses. The first trial ended in a mistrial when the jury was unable to agree on a verdict. The jury in the second trial convicted Barham, but this court reversed that conviction on appeal because the prosecutor enhanced the misleading impressions created by the false testimony of some government witnesses. *United States v. Barham*, 595 F.2d 231 (5th Cir. 1979) ("*Barham I*"). After the remand, Barham filed a motion to dismiss the indictment on the basis of double jeopardy. The district court denied the motion and, on expedited appeal, the Fifth Circuit dismissed Barham's appeal as frivolous. *United States v. Barham*, 608 F.2d 602 (5th Cir. 1979) ("*Barham II*").

On this appeal, Barham urges three grounds for reversal. First, double jeopardy bars his third trial because of the prosecutor's conduct in the first two trials. Second, the district court's refusal to give a requested instruction about, and its comments on, agreements between the government and some of its witnesses prevented Barham from demonstrating to the jury these witnesses' motive for testifying falsely. Finally, the district court erroneously permitted a defense witness to invoke his fifth amendment privilege, did not grant the witness immunity, and refused to inform the jury of the invocation of the privilege. The latter two errors, Barham contends, denied him his due process right to a fair trial and his sixth amendment right to cross-examination.

Because this court has previously decided Barham's double jeopardy claim adversely to him, and because we now find no merit to his due process claims, we affirm his conviction.

.I. The Double Jeopardy Claim

The government attempted to prove its case in all three trials by means of circumstantial evidence and the testimony of co-conspirators Sandra Simon, Charles Fowler, Diane and Jerry Beech, Joey Shaver, and Willie Vereen. The testimony of these government witnesses portrayed Barham as a conscious, continuous, and central actor in the counterfeiting operation. Barham's witnesses, David Simon, Marti Desforges, and Barham himself, testified that Barham

was an unwitting pawn of David Simon and knew nothing of the scheme.[1]

Because of the conflicting nature of the testimony, the credibility of the witnesses was of central importance. In all three trials, Barham attempted to impeach the credibility of the six key government witnesses by inquiring whether any of them stood to gain anything by testifying against Barham. In the second trial, as the prior Fifth Circuit opinion demonstrates, 595 F.2d at 238–43, three of the witnesses—Diane and Jerry Beech and Joey Shaver—testified in a misleading fashion, leading the jury to believe that they had received no promises. The prosecutor, perhaps unwittingly, reinforced this false impression by the mode of his questioning these witnesses. In fact, however, the United States Attorney for the Middle District of Tennessee had made specific promises to these three witnesses: he would not prosecute Diane Beech if she testified truthfully; he would prosecute Joey Shaver and Jerry Beech on one felony count only but would make their cooperation known to the sentencing judge if they testified truthfully. Barham's counsel had a copy of a letter from the United States Attorney for the Middle District of Tennessee setting forth the terms of these agreements. Although he had received this letter during Barham's first trial, he did not know that he had it until after the second trial, while preparing the appeal from the conviction. 595 F.2d at 243 n.17.

On appeal, a panel of this court held that the prosecutor's questioning of the witnesses, because it reinforced the deception created by the witnesses' testimony, denied Barham a fair trial. It therefore reversed his conviction and remanded the case for a third trial. The court specifically noted that it did not attribute to the prosecutor any malicious motives or intent to deprive Barham of a fair trial.

After the remand, while preparing for the third trial, Barham asserts, he first became aware of the extent to which the

prosecutor had engaged in deceit during the first trial. He then moved the court to dismiss the indictment on double jeopardy grounds, urging that the government's bad-faith conduct in the first and second trials barred it from attempting to prosecute Barham a third time. The district court denied the motion, holding that the prosecutor's conduct did not amount to prosecutorial overreaching or bad faith and that in any event double jeopardy bars a retrial after conviction only where the conviction is reversed for insufficiency of the evidence.

Barham immediately appealed the denial of his motion to dismiss the indictment, and the Fifth Circuit considered the appeal as an emergency matter. *See Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The court affirmed the district court's order, holding that double jeopardy does not bar a retrial even when prosecutorial misconduct taints a prior trial. Double jeopardy would have barred Barham's retrial had the prosecutor's misconduct forced him to move for a mistrial. *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). But, the court held, because Barham failed to move for a mistrial, double jeopardy does not bar a subsequent retrial, even if he would have moved for a mistrial had he known the truth at the time of the prosecutor's asserted misconduct. The court dismissed the appeal and the district court proceeded with the trial, which resulted in Barham's conviction.

■ On this appeal, Barham once again contends that the principles of double jeopardy bar his retrial because of the prosecutor's actions in the first and second trials. This claim is precisely the one determined by this court on Barham's earlier *Abney* appeal when the court dismissed the appeal as frivolous. That dismissal acts as an adjudication on the merits of the appeal, one that we are not free to reconsider. Barham has already had a full and fair opportunity

1. For a complete recitation of the facts, including the contradictory testimony proffered by

both sides, see *Barham I*, 595 F.2d at 234–38.

to present to this court his arguments about the merits of the double jeopardy issue and he may not seek a redetermination of the same issue by a subsequent panel. Therefore, we dismiss the appeal as to this issue.

## II. The Due Process Claims

### A. The Witnesses' Agreements with the Government.

Barham contends that because the government witnesses failed fully to disclose the extent and nature of their agreements with the United States Attorney for the Middle District of Tennessee, this court should reverse his conviction on the third trial, just as a prior panel of this court reversed his conviction on the second trial. He admits that the evidence in the third trial gave the jury a more accurate impression of the agreements than did the evidence in the first or second trials, but he contends that the distortions in his trial were nevertheless sufficient to deny him due process.

Specifically, Barham objects to two instances of examination of the witnesses. First, when the prosecutor asked government witness Jerry Beech, "Did [the U.S. Attorney for the Northern District of Alabama] explain to you that any promises made up in the Middle District of Tennessee had no effect on anything that happened down here in Alabama?" Beech replied, "Yes, sir." Barham objected, asking for an instruction, which the court declined to give, that the promise made in the Middle District of Tennessee would be binding on the government. Barham also contends that the testimony of Secret Service Special Agent Crosby exacerbated the jury's impression that the promise made in Nashville had no effect in the Northern District of Alabama.

Second, Barham objects to the court's treatment of Shaver's "equivocations" about his agreement with the government. Shaver testified that he was to be prosecuted on only one count in exchange for entering a guilty plea, not in exchange for his willingness to testify in Barham's trial. He agreed to cooperate with the government—by helping to set up a controlled buy, by telling the government what he knew, by testifying in Barham's (and co-defendant Simon's) trial, and by pleading guilty—only in hopes that it would "go easier" if he cooperated, he testified. Only his guilty plea resulted in a "promise," he asserted. Barham sought to question Shaver about the discrepancy between his understanding and that contained in the letter from the U.S. Attorney, but the court refused to allow the questioning, commenting that the confusion was caused by Shaver's "not really understanding the phraseology that you've used about deals" and exhorting Barham, "let's don't further confuse this issue, though."

Barham contends that the net effect of the testimony of Beech and Shaver about their agreements with the government, coupled with the court's refusal to give the requested instructions and its comments from the bench in the jury's presence, precluded the jury from fully understanding the nature of the government's agreements with its witnesses. The jury was unable to understand the witnesses' bias, Barham contends, thereby denying him a fair trial.

██ This argument is without merit. The reasons relied on by the court for reversal in *Barham I* are conspicuously absent from this case. First, Barham had a copy of the letter from the U.S. Attorney for the Middle District of Tennessee during the entire course of the third trial. Therefore, he was able to determine at exactly what point the witnesses' testimony may have departed from the truth, if at all. The government knew nothing about the nature of the agreements that Barham did not also know. Second, Barham conducted informed cross-examination of Beech and Shaver, making clear to the jury the witnesses' understanding of, or confusion about, the meaning of the agreements.[2] The witnesses tes-

---

2. Moreover, the court's and the government's examination of Beech and Shaver also developed those witnesses' understanding of their agreements with the U.S. Attorney and brought

tified at length, even if not in entirely consistent fashion, about their understanding of the agreements. A witness's belief that an agreement exists and his understanding of the scope of that agreement are far more crucial for assessing whether the witness has a motive for testifying untruthfully than is the U.S. Attorney's intention in making the agreement.[3] *See United States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976). The letter embodying the agreement itself was put into evidence, so the jury could determine what it believed the scope of the agreement to be and could more readily assess whether the witnesses' testimony of their understanding of the agreement was credible. Unlike the jury in the second trial, this jury amply understood that there was an agreement of some sort between the government and these witnesses, made its own assessment of their possible bias or motive in testifying, and weighed the credibility of their testimony accordingly.

B. The Witness's Invocation of the Fifth Amendment.

Barham believed that James Crews, a co-conspirator, would testify that he had obtained a quantity of counterfeit from Charles Fowler. Fowler, one of Barham's primary accusers, had testified that he did not distribute counterfeit but merely printed it. When Barham sought to impeach Fowler with Crews' testimony, however, Crews refused to answer questions about the source of the counterfeit, claiming his fifth amendment privilege. The court upheld the voir dire assertion of the privilege, ordered Barham not to ask questions in front of the jury that would require Crews to invoke the privilege, and refused to in-

struct the jury that Crews' invocation of the privilege prevented Barham from questioning him about Fowler.

Barham urges that the trial court's upholding of the privilege was erroneous because Crews had already been convicted on counterfeiting charges. Alternatively, the court could have upheld the privilege, but limited questioning to the $104,000 in counterfeit in Crews' possession when he was arrested, or it could have required that the government request use immunity in order to compel Crews' testimony. The failure of the court to do any of these things, Barham contends, denied Barham his fifth and sixth amendment rights and requires reversal of the conviction.

■■■ The trial court correctly allowed Crews to invoke the privilege, for although he had been convicted of possessing, distribution, and conspiring to make, possess, and distribute counterfeit, he had not been charged with receiving counterfeit money. Testimony concerning receipt of the counterfeit could therefore be self-incriminating. *Cf. United States v. Damiano*, 579 F.2d 1001 (6th Cir. 1978) (guilty plea on passing and uttering offenses does not waive privilege to refuse to testify about a source or acquisition of counterfeit). Limitations on the scope of cross-examination are within the discretion of the trial court. *See Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). Having correctly sustained the privilege, the trial court did not abuse its discretion in ordering counsel not to ask questions in front of the jury that they knew in advance would cause Crews to invoke the privilege. *United States v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

out the substance of what Barham apparently sought to develop.

**3.** We need not decide whether, as Barham contends, *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), would require that the U.S. Attorney for the Northern District of Alabama honor an agreement made by the U.S. Attorney for the Middle District of Tennessee concerning criminal acts in Alabama. Under the terms of the agreements as set out in

the letter, it is quite likely that the U.S. Attorney intended to limit the scope of his agreement to prosecutions over which he had jurisdiction. If he communicated that intention to the witnesses, *Giglio* would certainly not compel a broadening of that agreement. The complete testimony and cross-examination of the witnesses vitiates any need to consider this contention, however, regardless of the U.S. Attorney's true intention.

■ Finally, Barham asserts, almost as an afterthought, that the court should have ordered the government to request use immunity for Crews in order that he could testify for the defendant. Barham relies on a Third Circuit holding that in certain cases, due process may require that the prosecution grant use immunity to a defense witness, if prosecutorial overreaching has so impaired the defendant's ability to present his defense that he has been denied a fair trial. *United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976). This circuit has not yet had occasion either to accept or to reject *Morrison* and we need not do so today. Barham admits that the prosecutor did not engage in bad-faith conduct in the third trial, nor did Barham request use immunity at trial. Moreover, the testimony sought was not exculpatory, but merely impeaching on a collateral issue. Crews did in fact offer directly exculpatory testimony. In the presence of the jury, he identified Barham and stated that to his knowledge, Barham had nothing to do with the counterfeit currency. Therefore, the court did not err in refusing to depart from the usual rule that defendants have no general constitutional right to demand immunity for their witnesses. *See United States v. Beasley*, 550 F.2d 261 (5th Cir. 1977).

APPEAL DISMISSED IN PART, AFFIRMED IN PART.