James Andrew JOHNSON, a/k/a Jerry Leon Brooks, Petitioner-Appellant,

v.

Joseph S. HOPPER, Warden, et al., Respondents-Appellees.

No. 79–3804.

United States Court of Appeals, Fifth Circuit.

March 12, 1981.

Rehearing and Rehearing En Banc Denied April 9, 1981.

Howard J. Manchel, Atlanta, Ga., for petitioner-appellant.

James Andrew Johnson, pro se.

Arthur K. Bolton, Atty. Gen. of Georgia, Susan V. Boleyn, Asst. Atty. Gen., Robert S. Stubbs, II, Asst. Atty. Gen., Don A. Langham, First Asst. Atty. Gen., John C. Walden, Senior Asst. Atty. Gen., Atlanta, Ga., for respondents-appellees.

Before HENDERSON, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

We review on appeal after remand the application of James Andrew Johnson for habeas corpus relief pursuant to 28 U.S.C. § 2254. Johnson, a/k/a Jerry Leon Brooks, first petitioned *pro se* for habeas relief in 1978 alleging, *inter alia*, that his court appointed counsel, who was also appointed to represent Johnson's two co-defendants in a joint trial, was laboring under an impermissible conflict. The district court dismissed the petition finding that it was based on only vague and conclusory allegations. We reversed and remanded for an evidentiary hearing, *Brooks v. Hopper*, 597 F.2d 57 (5th Cir. 1979). On remand the district court concluded that any conflict of interest which may have existed did not violate petitioners' constitutional rights. Considering this matter controlled by the opinion of the Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), we reverse, order issuance of the writ of habeas corpus and remand to the district court for entry of an appropriate judgment.

Johnson, James Lewis Adkins and Walter H. Springer were indicted on five counts of armed robbery. The court appointed one attorney, William S. Cain, to represent all three defendants in a joint trial before the Georgia state court. Cain moved pre-trial for the appointment of separate counsel, expressing a concern that he could not properly represent any defendant because of the obligation to represent all three. The court asked Cain to explicate his reasons for believing a conflict existed. Cain declined on the grounds that to do so would constitute a violation of the attorney-client relationship. The court denied the request.

The joint indictment was based on charges that the three defendants had robbed the V. V. Vick Jewelry Store in Columbus, Georgia. All three testified, denied involvement and claimed to be in Atlanta on the day of the robbery. Johnson and Springer, who testified before Adkins, said they had never been to Vick's Jewelers and did not know each other at the time of the robbery. Adkins, testifying last, made several statements on cross-examination which tended to exculpate him and dramatically inculpated Johnson. Specifically, Adkins testified that on the day of the robbery Johnson telephoned him from Phenix City, Alabama (sister city to Columbus, Georgia) and said that "he [Johnson] had robbed V. V. Vick Jewelry and the police got the [getaway] car and he needed some help and wanted me [Adkins] to come pick him up." Prior to hearing it from the stand, Cain did not know that Adkins would directly accuse Johnson in this manner.

At this point Cain's vague concerns of being confronted with a situation in which representation of one client would occasion compromise of the position of another came to explosive fruition. The conflict was so severe it should have been obvious to everyone. In support of Johnson's earlier denial of involvement one would expect Johnson's counsel to endeavor to impeach or at least challenge Adkins' credibility. As Adkins' counsel, Cain was not free to do anything which might prejudice Adkins' defense. Any comment upon Adkins' testimony, either to bolster or lessen its effect, would cause Cain to breach his obligation to one client or the other. As a consequence, Cain did not examine Adkins on re-direct or recall Johnson to rebut. In fact he offered no evidence on the subject.

After the jury retired, Cain renewed his motion for the appointment of separate counsel. In his argument on the motion Cain informed the court that the pre-trial motion for separate counsel had not been based on knowledge that Adkins would testify as he did but on certain other concerns which did not materialize. The motion was again denied. The three defendants were convicted on all five counts and sentenced to five consecutive life sentences. There was no direct appeal. State habeas relief was denied.

In denying the § 2254 application the district judge reasoned that since Cain had no prior knowledge that Adkins intended to implicate Brooks, no actual conflict existed. This fails to give proper consideration to the professionally impossible position in

which Cain was placed from the moment Adkins testified about Johnson's involvement in the crime. Additionally, the district judge construed testimony by Adkins and Johnson at the state habeas proceeding to mean that Adkins did not intend to implicate Johnson in his surprise trial testimony. Our review of the record compels a contrary conclusion. Regardless, we question the relevance of Adkins' intentions.

As we stated at the outset, this matter is controlled by the Supreme Court's disposition in *Holloway v. Arkansas, supra.* In *Holloway*, one attorney was appointed to represent three defendants. He requested, before trial, that separate counsel be appointed, raising the spectre of conflict if one attorney tried to represent all three. When he learned that all defendants might testify, the attorney in *Holloway* resubmitted his motion on the ground that he would not be able properly to examine his clients for fear he might intrude upon the attorney-client privilege. The motion was again denied and the defendants were ultimately found guilty. The Supreme Court reversed their convictions, holding that the failure of the trial court to appoint separate counsel deprived the defendants of their Sixth Amendment guarantee of the effective assistance of counsel.

◼ In the case *sub judice* the district court placed too great an emphasis on Cain's inability to make an accurate pre-trial prediction of the exact problems that would arise. Cain's pre-trial motion, merely stating that separate counsel would be necessary to avoid a conflict, is quite similar to the motion in *Holloway* which was found to be sufficient to apprise the trial court of potential conflict. We have applied the rationale of *Holloway* in a situation where *no* request for separate counsel was made, concluding that ineffective representation by a lawyer laboring under a conflict of interest renders the trial fundamentally unfair whether the judge knew of the conflict or not. *Stephens v. United States*, 595 F.2d 1066 (5th Cir. 1979). Unlike most Fourteenth Amendment due process cases, no state action in the form of a state official's

knowledge of the wrongdoing need be shown. A deprivation of due process results when the judgment reached in such a trial is enforced. *Zuck v. State of Alabama*, 588 F.2d 436 (5th Cir. 1979).

◼ The mere fact that one lawyer represents more than one co-defendant does not automatically establish a conflict of interest. *Holloway*, 435 U.S. at 482, 98 S.Ct. at 1177; *United States v. Risi*, 603 F.2d 1193 (5th Cir. 1979). Further, an actual rather than a speculative conflict of interest must be shown before the constitutional guarantee of effective assistance of counsel is implicated. *Zuck, supra*, 588 F.2d at 439; *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978). The constitutional implication occurs when a defense attorney is placed in a situation "inherently conducive to divided loyalties." *Castillo v. Estelle*, 504 F.2d 1243, 1245 (5th Cir. 1974). We believe that Cain was clearly placed in such a situation. Cain was put in an untenable professional position when the court appointed him to represent all three defendants despite the apparent potential for conflict. The court should have extricated him from this position upon his initial request. The representations of an attorney, as an officer of the court, that he perceives a potential conflict should be given very serious consideration. *Holloway*, 435 U.S. at 486, 98 S.Ct. at 1179. The state district judge's failure to grant that first motion, pre-*Holloway*, is understandable. The denial of the renewed motion, after Adkins' surprise testimony inculpating Johnson, is not so easily understood. An injustice was done to Cain and the constitutional right to effective assistance of counsel was denied Johnson.

We need not inquire into the specific prejudice suffered by Johnson as a result of his lawyer's unavoidable divided loyalties, nor should we speculate on whether he would have been convicted regardless. Cain's inability to function in a conflict-free atmosphere violated Johnson's constitutional right to the assistance of counsel, a right so basic to a fair trial that its infraction cannot be treated as harmless error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824,

17 L.Ed.2d 705 (1967). The fact that Cain was present during the entire trial proceeding is of no moment. "The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters." *Holloway, supra*, 435 U.S. at 490, 98 S.Ct. at 1181. For this reason, the Court held in *Holloway* that when an actual conflict exists prejudice need not be proven, reversal is automatic. As the Supreme Court said in the landmark case, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942):

> To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. Cf. *Snyder v. Massachusetts*, 291 U.S. 97, 116 [54 S.Ct. 330, 336, 78 L.Ed. 674]; *Tumey v. Ohio*, 273 U.S. 510, 535 [47 S.Ct. 437, 445, 71 L.Ed. 749]; *Patton v. United States*, 281 U.S. 276, 292 [50 S.Ct. 253, 256, 74 L.Ed. 854]. And see *McCandless v. United States*, 298 U.S. 342, 347 [56 S.Ct. 764, 766, 80 L.Ed. 1205].

315 U.S. at 75–76, 62 S.Ct. at 467.

The reason behind the dispensation of the requirement of proving prejudice should become apparent when one considers the nigh impossible task of making a meaningful qualitative analysis of trial counsel proficiency, in a case involving divided loyalties, from an examination of the transcript alone. In *Zuck v. State of Alabama*, 588 F.2d 436 (5th Cir. 1979), we decried the inadequacy of a trial transcript when one seeks to assess a lawyer's trial performance for subtle variations in demeanor and lack of vigor and depth of cross-examination cannot be truly reflected in the pages of a transcript.

In a case when the attorney is confronted with a conflict of interest between co-defendants prejudice must be presumed and, except under the most extraordinary circumstances, the error cannot be considered harmless.

We conclude that Cain's conflict of interest operated to make Johnson's trial fundamentally unfair and constitutionally infirm. The decision of the district court denying habeas corpus relief is reversed; habeas relief is to be appropriately granted. The matter is remanded for entry of a proper judgment.

REVERSED and REMANDED.