James Harrison BARHAM, a/k/a Robert Meyers, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 82–7419.

United States Court of Appeals, Eleventh Circuit.

Feb. 16, 1984.

David M. Olive, Birmingham, Ala. (court-appointed), for Barham.

Frank W. Donaldson, U.S. Atty., Michael V. Rasmussen, John E. Ott, Asst. U.S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT and FAY, Circuit Judges, and WISDOM *, Senior Circuit Judge.

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

FAY, Circuit Judge:

Appellant, James Barham, appeals to this court for the fourth time alleging error in his conviction under 18 U.S.C. § 371 and § 471 for conspiracy to counterfeit and aiding and abetting counterfeiting. In Barham's first trial on these charges the jury deadlocked and a mistrial was declared. The second trial yielded a conviction which was reversed on appeal due to the government's use of perjured testimony. *United States v. Barham,* 595 F.2d 231 (5th Cir. 1979). Appellant's conviction at his third trial [1] was affirmed on appeal. 625 F.2d 1221 (5th Cir.1980), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 205 (1981). Appellant then initiated this habeas corpus petition in the Northern District of Alabama alleging denial of his constitutional right to effective assistance of counsel. The district court denied relief and we affirm.

During all three trials and in his direct appeal appellant retained Mr. E.E. Edwards to represent him. Between appellant's second and third trial James Wayman, a prosecution witness, asked Mr. Edwards to represent him in a civil matter concerning Wayman's United States Navy retirement benefits. Mr. Edwards agreed to and did represent the government witness, placing himself in a position that the district court found "inexcusable" and the magistrate considered "totally incorrect." Nonetheless, the magistrate and district court denied relief.

Appellant raises one issue: "[w]hether appellant was denied the constitutionally protected right to effective assistance of counsel by the simultaneous representation, in an apparently unrelated civil matter, by appellant's trial counsel of a government witness."

At the evidentiary hearing on this petition the question of actual conflict was investigated. The government argued then and now that no actual conflict resulted from the simultaneous representation. The government further argues that Wayman had testified at two prior trials before the simultaneous representation began and that Wayman's testimony at the third trial was the same as that of the previous two trials. Defense counsel's cross-examination of Wayman was also the same in all three trials, thus suggesting that no actual prejudice resulted.

To show the insignificance of Wayman's testimony the government's brief explains all of the evidence in the government's case against Barham. We condense this as follows:

In the Spring of 1977 appellant and Simon discussed the possibility of counterfeiting money. They learned from Dennis Hathcock the equipment they would need.

June 9, 1977. Barham, now using an alias, purchased a printing press in Jackson, Tennessee.

June 11, 1977. Barham purchased 22 acres of land with a trailer and fish house near the Alabama-Tennessee border. He paid cash and put the deed in his daughter's name.

Barham and Simon then located a platemaker at a printing supply company in Goodletsville, Tennessee. At night Simon and another man broke into the printing company office and stole the platemaker while Barham stood watch.

About two days later Barham and Simon went to Dury Graphics in Nashville, Tennessee looking for a camera. Barham introduced himself to James Wayman, the salesman, as Robert Meyers. Barham then inquired about cameras. He used a false business name and address and told a false story about printing programs for a racetrack. On June 21, 1977 Barham, using his alias, bought a camera for cash from another printing store in Nashville. On June 23, 1977 Barham purchased supplies from a third printing store in Nashville.

After unsuccessful attempts to print money, Barham involved Charles Fowler, a printer, in a poker game. Once Fowler

---

[1]. Before the third trial, defense counsel alleged that appellant should not be retired because of the double jeopardy clause. This was rejected by the Fifth Circuit. 608 F.2d 602 (5th Cir. 1979).

became indebted to Barham he was induced to aid the counterfeiting scheme. Thereafter Barham purchased paper from a store in Florence, Alabama. Barham's wife cashed checks for amounts that equalled what Barham allegedly paid to Fowler for aiding the scheme. With Fowler's help the group printed $560,000 of counterfeit money. They aged and dried some of the money and began selling it.

Based on an informant's tip the Secret Service arrested some members of the conspiracy. After obtaining search warrants, Simon's and Barham's houses were searched and the printing equipment was found.

All of these facts are established in the record of the trial. From the record, we too agree that Wayman's testimony was very circumstantial and insignificant. The government's case would have been made without it, for it only established that Barham used the alias when looking at cameras. He actually bought the camera used in the counterfeiting elsewhere. Appellant argues that Wayman's identification of him was shaky [2] and perhaps could have fallen under vigorous cross-examination. Even if it had, the government's case was very strong. Because Wayman's testimony and Edwards' cross-examination were the same in all three trials we cannot conclude that Edwards' advocacy was dulled due to the simultaneous representation. Further, even if Wayman could have been impeached on the third cross-examination this would not have affected the outcome.

The sixth and fourteenth amendments guarantee reasonably effective assistance of counsel. *Mylar v. Alabama,* 671 F.2d 1299, 1300 (11th Cir.1982) *cert. denied,* — U.S. —, 103 S.Ct. 3750, 77 L.Ed.2d 1411 (1983). When counsel has a conflict of interest it may "cause counsel's representation to fall below the sixth amendment standard," however, "not all conflicts are so egregious as to constitute a sixth amendment violation." *Westerbrook v. Zant,* 704

F.2d 1487, 1498 (11th Cir.1983). *See United States v. Mers,* 701 F.2d 1321, 1326 (11th Cir.1983) ("mere fact of joint representation will certainly not show an actual conflict.") (citations omitted) *cert. denied,* — U.S. —, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983).

In *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court held that "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his sixth amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. at 1719. To prevail on a claim of ineffective assistance, a defendant must show "that his counsel actively represented conflicting interests." *Id.*

In *Baty v. Balkcom,* 661 F.2d 391, 396 (5th Cir.1981) (Unit B), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982), *Cuyler* was interpreted as not "requiring proof of adverse effect on counsel in addition to proof of an actual conflict of interest." Thus, "prejudice must be presumed, and except under the most extraordinary circumstances, the error cannot be considered harmless." *Id.* at 395, *quoting Turnquest v. Wainwright,* 651 F.2d 331, 334 (5th Cir.1981) (Unit B), *quoting Johnson v. Hopper,* 639 F.2d 236, 239 (5th Cir.1981) *cert. denied,* 454 U.S. 1010, 102 S.Ct. 548, 70 L.Ed.2d 412 (1982). The threshold issue is whether there is an actual conflict; for if so, prejudice will be presumed. Therefore, even though we acknowledge that the appellant suffered no prejudice we must examine if there was an actual conflict.

Is This Actual Conflict?

The test of actual conflict for this circuit was formulated in the context of joint representation of co-defendants. "An actual conflict exists if counsel's introduction of probative evidence or plausible arguments

---

**2.** Barham testified at the habeas hearing that he asked his counsel, Edwards, to pursue mistaken identity with Wayman and Edwards refused. According to Barham, Edwards refused to recall Wayman because the potential of mistaken identity was learned by Edwards from

Wayman under circumstances protected by the attorney-client privilege. Barham testified to two post-trial conversations with Edwards that affirm this story. Edwards denied such conversations. The Magistrate did not find Edwards' testimony more credible than Barham's.

that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *Baty v. Balcom,* 661 F.2d at 395; *Turnquest v. Wainwright,* 651 F.2d 331, 333 (5th Cir.1981); *United States v. Freeman,* 619 F.2d 1112, 1121–22 (5th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *Foxworth v. Wainwright,* 516 F.2d 1072, 1076 (5th Cir.1975).

This court has explained recently how the test of actual conflict is applied.

> We will not find an actual conflict unless appellants can point to 'specific instances in the record to suggest an actual conflict or impairment of their interests.' *United States v. Fox,* 613 F.2d 99, 102 (5th Cir. 1980). Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney 'made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.'

*United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.1983) *quoting* Comment, *Conflict of Interests in Multiple Representation of Criminal Co-Defendants,* 68 *T.Crim.L. & Criminology,* 226, 232 (1977). In *Mers* the court found that joint representation of co-defendants was not an actual conflict because "[n]o appellant has pointed to any different defense theory or new evidence or

testimony that independent counsel could have elicited." 701 F.2d at 1329–30.

The analysis suggested in *Mers* is difficult to perform in the instant case because we have very little record to examine. The only record before this court consists of the transcript from the Magistrate's hearing on this petition. During that hearing the appellant testified that after his second trial Mr. Edwards, his attorney, told him that he knew that Wayman's identification of the appellant was shaky but that he could not bring it out at trial because this knowledge was gleaned under circumstances protected by the attorney-client privilege.[3] R.Vol. 2 at 12–13. Mr. Edwards denied having made this statement or having learned any information protected under the attorney-client privilege.[4] R.Vol. 2 at 50. He testified that his representation of Wayman "had not the remotest connection" with Mr. Barham's trial and that he considered there to be no conflict. Mr. Edwards testified that he decided to cross examine Mr. Wayman in a friendly rather than hostile, manner because the jury would not have been pleased had he done otherwise. He felt the jury would identify with Mr. Wayman, a citizen, who had coincidental knowledge of a fact and had been inconvenienced three times to travel from Nashville to Birmingham to testify. R.Vol. 2 at 46–47. The Magistrate did not find either Mr. Edwards or the appellant more credible than the other.

---

**3.** Had such an admission of uncertainty occurred in circumstances protected by the attorney-client privilege it would not be grounds for reversal nor would it change our conclusion that no prejudice resulted. In *United States v. Alberti,* 470 F.2d 878 (2d Cir.1972) *cert. denied,* 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973), the court addressed facts similar to those of the instant case and concluded that no conflict or prejudice resulted. The court noted that the information gleaned from the attorney-client relationship to the government witness was helpful in structuring cross-examination. As long as the conflict was not real, the dual representation actually worked to the defendant's advantage. Here too if counsel learned that Mr. Wayman's identification was shaky, this would have been an advantage rather than a detriment. Mr. Edwards could have preserved his client's confidence, yet still conduct

more effective cross-examination than an attorney without this knowledge.

**4.** Appellant's counsel did not bring to the trial court's attention his simultaneous representation of Mr. Wayman and appellant. Appellant testified that he only learned of the situation after his third trial but before the direct appeal. R.Vol. 2 at 8. Mr. Edwards represented appellant in his direct appeal. Mr. Edwards testified that he mentioned the simultaneous representation to appellant and explained that there was no possibility that appellant's interest and Mr. Wayman's interests would conflict. Appellant's testimony is in direct conflict with Mr. Edward's and because the Magistrate found neither witness more credible than the other we are unable to conclude appellant consented to the joint representation.

Mr. Wayman also testified. He stated that he had no relationship of any sort with the appellant nor any interest in the outcome of his trial. Mr. Wayman testified that he never discussed his testimony at the Barham trial with Mr. Edwards and he specifically denied having ever indicated any equivocation about his identification of Barham. He also stated that his testimony was the same in all three trials.

From this transcript we gather that the only decision Mr. Edwards made that potentially affected both of his clients was whether to cross examine Mr. Wayman in a friendly or hostile manner. This hardly rises to the actual conflict standards enunciated above. There is no indication that Mr. Edwards made a choice between possible actions that would or could have been helpful to one client and harmful to the other. Mr. Wayman and Mr. Barham's interests do not intersect, much less conflict, in this case. As our earlier discussion of the evidence against Mr. Barham shows, Mr. Wayman's testimony was wholly inconsequential to the state's case. We conclude that the alleged conflict in this case remained hypothetical and thus does not meet the sixth amendment threshold announced in *Cuyler.*

Our conclusion in this case should not be read as condoning defense counsel's simultaneous representation of a prosecution witness. In the abstract, or the hypothetical, it is not a good idea at all. These facts, however, present the "extraordinary circumstances" excepted from the rule in *Baty v. Balcom, supra,* and the precedent of this circuit that prejudice is presumed. We find no conflict and no prejudice resulted from this dual representation.

We therefore affirm the district court's finding that appellant was not denied effective assistance of counsel.

WISDOM, Senior Circuit Judge, concurring:

I agree that we should affirm the district court's denial of Barham's habeas petition, but I have some reservations about the rationale and the language of the court's opinion. I cannot agree that attorney Edwards's simultaneous representation of Bar-ham, a criminal defendant, and Wayman, a prosecution witness, did not create an "actual conflict". Both the magistrate and the district judge correctly found that such a conflict did exist. The majority, desiring to uphold a conviction that clearly ought to be upheld, appears to hold that simultaneous representation of a defendant and an adverse witness will not vitiate a conviction unless the defendant can adduce on-the-record evidence that his counsel acted in a way that harmed him. The majority opinion's reliance on the "extraordinary circumstances" test of *Baty v. Balcom,* 11 Cir.1981, 661 F.2d 391, *cert. denied,* 1982, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308, indicates that such a broad holding is not intended. I would avoid the risk of misunderstanding by basing our affirmance squarely on the truly "extraordinary" facts of this case: that Wayman was not a key government witness, that the only actions of counsel that might have prejudiced Barham are in the record and are therefore subject to scrutiny by this court, and that we have two previous trials with which we can compare Edwards's cross-examination of Wayman during the third trial. This "extraordinary" opportunity for comparison allows us to find that although attorney Edwards did have conflicting duties, this actual conflict did not prejudice Barham.

I.

The majority relies on *United States v. Mers,* 11 Cir.1983, 701 F.2d 1321, 1328, *cert. denied,* —— U.S. ——, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983), in which this Court stated that actual conflict is demonstrated when a habeas petitioner "make[s] a factual showing of inconsistent interests and ... demonstrate[s] that the attorney 'made a choice between possible alternative courses of action....'" The majority concedes that attorney Edwards had conflicting duties when he decided how thoroughly or lightly to cross-examine Wayman. But the majority then holds that, because Wayman's testimony was "inconsequential", this conflict "hardly rises to the actual conflict standards" of *Mers.*

The majority's approach improperly conflates two inquiries into one: in effect, the majority says there was no "actual conflict" because the effects of the conflict were harmless. This approach is at odds with the prophylactic nature of the rules against conflicts of interest. The right to effective counsel is basic to our adversary system of justice, and essential if that system is to yield just results and a belief among the participants, and the citizenry at large, that justice has been done. *See* Babcock, *Fair Play: Evidence Favorable to an Accused and Effective Assistance of Counsel,* 34 Stan.L.Rev. 1133 (1982). If we are to preserve that belief in the essential justice of the system, we must protect against not only the fact but the *appearance* of injustice. In the usual case of conflicting interests, the fact of prejudice "may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty." *Castillo v. Estelle,* 5 Cir.1974, 504 F.2d 1243, 1245. A conflict of interest may affect the actions of an attorney in many ways, but the greatest "evil ... is in what the advocate finds himself compelled to *refrain* from doing...." *Holloway v. Arkansas,* 1978, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426, 438. In such circumstances a reviewing court cannot be certain that the conflict did not prejudice the defendant. Accordingly, it is settled that once an actual conflict is shown, prejudice is presumed. *Cuyler v. Sullivan,* 1980, 446 U.S. 338, 349–50, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 347; *Holloway,* 435 U.S. at 490–91, 98 S.Ct. at 1181–82, 55 L.Ed.2d at 438; *Glasser v. United States,* 1941, 315 U.S. 60, 75–76, 62 S.Ct. 457, 467–78, 86 L.Ed. 680, 702; *Baty,* 661 F.2d at 396. The majority does not directly contest this principle. Instead, it states that because the effects of the conflict in this case were insignificant, there was no "actual conflict". This is a demand for proof of prejudice in another guise, and it is

no less inconsistent with the law of effective assistance of counsel than would be a direct demand for proof of prejudice.

I respectfully suggest that the majority applies too stringent a standard for finding "actual conflict" in part because it relies entirely on cases involving the joint representation of co-defendants by a single attorney. Such joint representation has never been considered a per se denial of effective assistance. *Holloway,* 435 U.S. at 482–83, 98 S.Ct. at 1178, 55 L.Ed.2d at 433. In some cases, multiple representation may be advantageous to the co-defendants notwithstanding some potential conflicts. "Joint representation is a means of insuring against reciprocal recrimination. A common defense system gives strength against a common attack". *Glasser,* 315 U.S. at 92, 62 S.Ct. at 475, 86 L.Ed. at 710–11 (Frankfurter, J., dissenting). A per se rule against joint representation would deprive defendants of this strategy even in cases where the strategy would be beneficial to their defense. The courts are therefore willing to tolerate potential conflicts so long as those conflicts remain only hypothetical and not actual. There is no comparable reason to facilitate a single attorney's concurrent representation of a defendant and an adverse party or witness. Such concurrent representation is inherently adverse to the defendant's interests.

The majority finds "that the only decision Mr. Edwards made that potentially affected both of his clients was whether to cross-examine Mr. Wayman in a friendly or hostile manner", and concludes that because Wayman's testimony was "inconsequential" the conflict "remained hypothetical". But in this habeas proceeding the magistrate found that Wayman's testimony, while brief, was "certainly a significant chain of events in the prosecution's case". The record supports this assessment. Each of Barham's three trials has turned on issues of credibility.[1] Indeed, this Court reversed Barham's first conviction because the

---

1. While the government's evidence appears overwhelming, it is instructive to remember

that Barham's first trial ended in a hung jury.

government used perjured testimony, and we emphasized that "credibility was especially important in this case in which two sets of witnesses . . . presented irreconcilable stories." *United States v. Barham,* 5 Cir.1979, 595 F.2d 231, 242–43. Wayman testified that Barham had used an alias, a false address, and a false explanation for his interest in buying a printing camera. Wayman was one of the few witnesses in this case who was not involved in the alleged conspiracy. His testimony was likely to have a significant impact on the jury's assessment of Barham's credibility. Even more apparent is the adverse effect a successful cross-examination could have had on the government's case. If attorney Edwards were able to convince the jury that Wayman's identification of Barham was mistaken, it might affect the jury's perception of the credibility of the prosecution's entire case. Therefore, it was in Barham's interest for his attorney to probe deeply into the possibility that Wayman's identification was mistaken, that his memory had been "refreshed" by government coaching, and the like. Edwards, on the other hand, would not want to alienate his client Wayman by engaging in an annoyingly persistent cross-examination on behalf of his client Barham.

"If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client." *Zuck v. State of Alabama,* 5 Cir.1979, 588 F.2d 436, 439, *cert. denied,* 1979, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42. In *Zuck,* the defense attorney also represented the prosecutor in an unrelated civil matter. While there was no showing that the defense attorneys actually did anything or refrained from doing anything because of this dual representation, the Court held that the attorneys' conflicting duties to their clients were sufficient to create an actual conflict. *Id.* at 439–40. Similarly, in *Castillo,* the defense attorney also represented the victim of the charged crime, who was

one of the two principal witnesses for the prosecution. Again, the Court found it unnecessary to inquire into alleged instances of prejudice; the fact of conflicting duties was enough to create a "real" conflict. 504 F.2d at 1245. In the present case attorney Edwards's decision to cross-examine "in a friendly manner" may have had little impact on the outcome of the case. But all the same, Edwards had conflicting duties to his two clients and this conflict became actual when he was required to cross-examine Wayman.

## II.

In the usual case the existence of an actual conflict would require us to grant the habeas petition. This Court and its predecessor have several times stated that an actual conflict cannot be harmless "except under the most extraordinary circumstances". *Baty,* 661 F.2d at 395; *Turnquest v. Wainwright,* 5 Cir.1981, 651 F.2d 331, 334; *Johnson v. Hopper,* 5 Cir.1981, 639 F.2d 236, 239, *cert. denied,* 1981, 454 U.S. 1010, 102 S.Ct. 548, 70 L.Ed.2d 412. These cases have not discussed what circumstances would rise to the level of "extraordinary", and the Court has never before actually invoked this exception, but I believe that "extraordinary circumstances" are presented here. The reasons that underlie the rule proscribing the application of "harmless error" doctrine are inapplicable here.

First, the conflict, although real, could affect only Edwards's cross-examination of Wayman. Unlike *Holloway,* therefore, there is no concern that the conflict may have affected off-the-record conduct before or after trial. *See* 435 U.S. at 490–91, 98 S.Ct. at 1182, 55 L.Ed.2d at 438. Any effects of Edwards's conflicting interests could be identified in a record preserved for appellate and collateral review.

Second, unlike *Zuck* and *Castillo,* the conflict here was not one that could infect the entire trial. Wayman was not the prosecutor or the victim of the crime, and he had no interest in the outcome of the trial. Although Wayman's testimony was not "in-

**1536**

consequential", Wayman was only a minor witness.

Most importantly, we can assess the risk of prejudice in this case because there have been two previous trials and Edwards has twice before cross-examined Wayman. The magistrate and the district court compared the cross-examinations and found that, if anything, Edwards's cross-examination of Wayman *improved* after Wayman became Edwards's client. Inquiry into the effects of an error is difficult and undesirable in any context, because it is difficult to determine with absolute certainty what "would have happened" in the absence of the error. Conflicts of interest present especially subtle risks of prejudice, which make the inquiry even more difficult and less desirable. In this case, however, we know what "would have happened" because the same cross-examination was conducted both before and after the conflict of interest arose. This rare opportunity for comparison allows us to say with certainty that, despite the actual conflict of interest, Barham was not deprived of effective assistance of counsel.

The majority also invokes the "extraordinary circumstances" exception of *Baty,* and even though it finds no actual conflict the majority is careful to consider whether Barham incurred prejudice. Whether the theory of this case is that there was no actual conflict, as the majority holds, or that prejudice need not be presumed here, as I would hold, the holding of the case is limited to its very special circumstances: where the prosecution witness is a minor one, the conflict affects only on-the-record conduct that can be completely reviewed, and there is a previous cross-examination that provides a basis for comparing counsel's conduct before and after the conflict arises.