Vernal Amtri TURNQUEST,
Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, as Secretary, Department of Corrections, State of Florida, Respondent-Appellant.

No. 80–5305.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 20, 1981.

Anthony C. Musto, Asst. Atty. Gen., Alan T. Lipson, Miami, Fla., for respondent-appellant.

---

Elliot H. Scherker, Asst. Public Defender, Miami, Fla., for petitioner-appellee.

Before TUTTLE, RONEY and ANDERSON, Circuit Judges.

RONEY, Circuit Judge:

The sole issue presented on appeal is whether the district court properly held that defendant was denied effective assistance of counsel because his attorney had a conflict of interest in representing him jointly with the codefendant. We affirm the grant of habeas corpus relief.

The facts are not in dispute. Defendant Vernal Turnquest and codefendant Henry Smith were prosecuted for the 1972 armed robbery of a convenience food store in Dade County, Florida. Both parties were represented by the same privately-retained counsel.

The asserted conflict of interest arises because of a witness, Willie Watson, who would have contradicted Government testimony as to Turnquest, but would have incriminated Smith. While Turnquest was awaiting trial, he wrote to Watson, who was imprisoned on an unrelated charge. Watson replied he would be willing to testify that he was the person who robbed the convenience store while Turnquest, Smith and a third person remained outside in the getaway car.[1] Defense counsel was informed of Watson's offer to testify and the trial transcript indicates he may have initially intended to call Watson as a witness.[2]

At trial, defendant was identified as the gunman inside the store by the store manager, a customer, and a police officer who had happened upon the scene while the robbery was in progress. The officer apprehended defendant when the getaway car wrecked after a high-speed chase. Smith

---

1. Mr. Slattery, a polygraph examiner who had given a lie detector test to Watson, testified at the hearing before the magistrate:

Q. [D]irecting your attention to your interview with Mr. Watson, did you have occasion to question him regarding a robbery of a U-Totem store located at 17010 West Dixie Highway on August 9, 1972?
A. Yes, sir, I did.
Q. Did Mr. Watson make any statements regarding his participation in that robbery?
A. Yes, he did.
Q. What, if anything, did he say regarding his participation?
A. Well, Willie Edward Watson told me that he and not Vernal Turnquest was the person who robbed that store.
Q. Did he make any statements regarding the participation of any other persons?
A. Yes, he did.
Q. How many other persons besides himself?
A. Besides him, three other people [Turnquest, Smith and Griggs].
THE COURT: How many?
THE WITNESS: Three.
Q. Did Mr. Watson make any statements regarding the degree to which Vernal Turnquest had participated in the robbery?
A. Yes, sir.
Q. What, if anything, did he say in that regard?
A. He said that Mr. Turnquest stayed in the car while the robbery was taking place.
Q. Did Mr. Watson have occasion to make any statements regarding whether he

had informed Mr. Turnquest then of his responsibility for the robbery?
A. Yes, sir.
Q. And what, if anything, did he tell you in that regard?
A. He said that he did tell Mr. Turnquest's attorney that he had done the robbery, and he said that he had come down to testify. He said he came down from Lake Butler. He was in the Dade County Jail for two days. He never had an opportunity to testify and was never told why not.

2. In his voir dire, defense counsel questioned the prospective jurors:

. . . Would it be impossible or would it not be reasonable for you sitting here as jurors to give as much consideration to a situation that could develop in a trial where a person were to stand up and make a statement that, "I committed a crime. I committed this crime." Because we all snicker slightly at the thought.

But would it be possible for you jurors to give the reasonableness that I am talking about . . . and credence and weight to the testimony of a witness who were to, not theatrically, but within the scope of Perry Mason, stand up and make an admission of guilt. Could you still give these defendants the reasonable doubt and the consideration of that testimony along with the other testimony and return a verdict if you felt it to be true of not guilty for these defendants? Could you do that?

was arrested a few blocks away as he was attempting to hitchhike.

At the conclusion of the State's case, defense counsel informed the trial court that Watson, who was still in custody in state prison, had arrived in Dade County and was being brought to testify. The State objected to Watson's appearance but later withdrew its objection. Apparently expecting the objection to be sustained, however, defense counsel did not have Watson brought to court, and consequently he did not testify.

For the defense, codefendant Smith testified he had been hitchhiking home from a beach party when he was apprehended by the police. He denied he had been at the scene of the crime or had any involvement in the robbery. Defendant did not testify. The remaining defense was limited to attacking the eyewitness identifications.

After deliberating for several hours, the jury found defendant guilty but Smith innocent. Defendant was sentenced to 99 years, although apparently he has since been released on parole.

After exhaustion of his state remedies, defendant filed a petition for federal habeas corpus relief on the ground of ineffective assistance of counsel. A hearing was held before a magistrate. The district court, adopting the recommendations of the magistrate, upheld defendant's claim and ordered the State to retry defendant within ninety days, or failing that, vacate his conviction. A stay of the court order has been granted pending appeal by the State.

█ The Supreme Court has squarely held that a state prisoner may obtain a federal writ of habeas corpus by showing that his retained defense counsel represented potentially conflicting interests. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The Court found the failure of retained counsel to provide adequate representation free of conflicting interests can render a trial so fundamentally unfair as to violate the Sixth Amendment, made applicable to the States through the Fourteenth Amendment. *Id.* at 343–44, 100 S.Ct. at 1715–16.

In this Circuit the following test has been established for determining whether there has been a conflict of interest:

A conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing.

*Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir. 1975). *See also Johnson v. Hopper*, 639 F.2d 236 (5th Cir. 1981); *Zuck v. Alabama*, 588 F.2d 436 (5th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). Moreover, the conflict must be actual rather than speculative. *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718.

█ The evidence in this case indicates defense counsel was presented with an actual and substantial conflict of interest. Watson's assertion that Smith was in the getaway car with defendant would have directly contradicted Smith's testimony that he was not at the scene of the robbery. On the other hand, Watson's testimony would have been favorable to defendant to the extent it would have contradicted the eyewitness identification of defendant as the gunman.

The State argues the obvious difficulty with the use of Watson's testimony. It would have implicated defendant in the robbery as the driver of the car, and therefore not have furnished a plausible defense. Under Florida law, an aider and abettor is as guilty as the principal, in this case the gunman. Fla.Stat.Ann. § 777.011 (1974). We agree, however, with the magistrate's response to this argument: It is simply unrealistic to contend that Watson's testimony would not have been favorable to Turnquest, at least as to sentencing. Surely it is reasonable to expect a sentencing Judge to be more harsh with an individual who had held a convenience store clerk at gunpoint than with an individual waiting in the car.

The state argues, however, that even if that is true, Turnquest is entitled to no more than resentencing, since the evidence

would not have been favorable to him at trial. This ignores the realities of a trial, however. The only defense available to Turnquest was the effort of his counsel to persuade the jury that the three eyewitnesses were confused in their identification of Turnquest. That counsel succeeded in raising serious concern on the part of the jury is evidenced by its deliberation for four hours and ten minutes in what was, on its face, a very simple case, and its question shortly before return of the verdict, concerning whether Turnquest was apprehended in the black shirt which the robber had been described as wearing. It is apparent that at least someone on that jury was uncertain whether the witnesses' observations had been accurate. How can it be said at this point in time that the further factor of a witness who, at the expense of confessing to a crime of which he was not charged, would testify that the eyewitnesses were entirely wrong in their identification of Turnquest, might not have raised reasonable doubt in the mind of one or more jurors about the validity of the rest of the witnesses' observations during the alleged robbery?

Moreover, as defendant argues, the testimony may have served as a basis for a "jury pardon," a practice under Florida law by which a jury has the opportunity to find a defendant guilty of a lesser offense. *Henderson v. State*, 370 So.2d 435 (Fla.App. 1979). The jury may well have concluded that as a mere occupant of the getaway car, defendant should be found guilty of a less serious charge than armed robbery.

■ The decision in this case, however, does not turn on the specific prejudice shown to have been suffered by defendant, or on speculation as to whether he would have been convicted regardless of Watson's testimony. His attorney was simply blocked from making a decision in the best interest of Turnquest alone, because he was bound to consider the best interest of his other client Smith, an interest which clearly conflicted with the use of Watson's testimony. Turnquest was entitled to an attorney who could make a decision to use or not to use Watson unfettered by the effect of that decision on his other client's case. It is well established that when counsel is confronted with an actual conflict of interest prejudice must be presumed, and except under the most extraordinary circumstances, the error cannot be considered harmless. *Johnson v. Hopper*, 639 F.2d 236, 239 (5th Cir. 1981). *See also Cuyler*, 446 U.S. at 349, 100 S.Ct. at 1718.

We hold the district court did not err in granting defendant's petition for habeas corpus. The decision ordering the State to retry defendant within ninety days or vacate his conviction is affirmed. The ninety days will commence with the issuance of the mandate of this Court.

AFFIRMED.