**NO. PD-0419-15**

_____

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

_____


EX PARTE: DANIEL ALVAREZ


_____


THE 384TH DISTRICT COURT OF EL PASO COUNTY, TEXAS
TRIAL COURT NO. 960D10169-384-1

THE COURT OF APPEALS EIGHTH DISTRICT OF TEXAS
NO. 08-13-00025-CR

---

**PETITION FOR DISCRETIONARY REVIEW**

---

JAMES D. LUCAS
2316 Montana Avenue
El Paso, Texas 79903
Tel: (915) 532-8811
Fax: (915) 532-8807
SBN 12658300

Attorney for Petitioner
DANIEL ALVAREZ

**jlucas2@elp.rr.com**

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................i

INDEX OF AUTHORITIES....................................................................................ii

STATEMENT REGARDING ORAL ARGUMENT................................................iii

STATEMENT OF THE CASE...............................................................................iii

STATEMENT OF PROCEDURAL HISTORY.......................................................iii

GROUNDS PRESENTED.....................................................................................iv

ARGUMENT..........................................................................................................1

1. By ruling that a conflict of interest is not proven where the un-refuted evidence establishes that an attorney who has undertaken the joint representation of co-defendants follows through with a plan and agreement he has made with one co-defendant to secure the dismissal of that co-defendant's case in exchange for inducing the other co-defendant to plead guilty, the court of appeals has decided a case which conflicts with the Supreme Court decision in *Dukes v. Warden*, 406 U.S. 250 (1972)...........................................................................1

2. The ineffective assistance test adopted by the court of appeals in this case conflicts with and misstates the test adopted by the U.S. Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335 (1980)........................................................7

PRAYER................................................................................................................11

CERTIFICATE OF COMPLIANCE.....................................................................12

CERTIFICATE OF SERVICE..............................................................................12

APPENDIX............................................................................................................13

# INDEX OF AUTHORITIES

**FEDERAL CASES**                                          **PAGES**

*Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981).................................................8, 9, 11

*Cuyler v. Sullivan*, 446 U.S. 335-50 (1980)..............................................5, 7, 8, 9, 11

*Dukes v. Warden*, 406 U.S. 250 (1972)........................................................1, 4, 5, 7

*Turnquest v. Wainright*,  651 F.2d 331, 334 (5th Cir. 1981)...................................11

*United States v. Mers*, 701 F.2d 1321 (11th Cir. 1983).............................................10

*United States v. Salado*, 339 F.3d 285 (2003)..........................................................10

**STATE CASES**

*Gaston v. State*, 136 S.W.3d  315, 318
(Tex.App.–Houston [1[st] Dist.] 2004, pet. dismissed)................................................5

*Ex parte McFarland*, 163 S.W.3d 743, 759 (Tex. Crim.app. 2005).....................7, 9

*Routier v. State,* 112 S.W.3d 554(Tex. Crim. App. 2003)........................................9

**RULES**

TEX. CODE CRIM PROC. art.11.072.........................................................................iii

**STATEMENT REGARDING ORAL ARGUMENT**

Petitioner, Daniel Alvarez, waives oral argument in this case.

**STATEMENT OF THE CASE**

Daniel, Appellee in the court of appeals below, was indicted for the second degree felony of possession of cocaine in an mount of our grams or more, but less than 200 grams. *CR at 3.* On June 9, 1997, Alvarez pled guilty and was assessed punishment a 5 years' deferred adjudication community supervision sentence. I Supp. CR at 3-8. Alvarez did not appeal the trial court's order placing him deferring an adjudication. On July 27, 2012, Alvarez filed an application for writ of habeas corpus pursuant to Article 11.072 of the Texas Code of Criminal Procedure. *CR 4-21.* On December 17, 2012, the court heard evidence and argument and on January 16, 2013, the trial court granted Alvarez' application for writ of habeas corpurs and issued findings of fact and conclusions of law. *RR 4-42*; *CR at 163-165.*

**STATEMENT OF PROCEDURAL HISTORY**

1. On January 28, 2015, the court of appeals reversed the trial court's order granting relief on Daniel Alvarez' application for writ of habeas corpus.

2. On February 27, 2015, a motion for rehearing was filed and on the same day an motion to extend time to file a motion for extension of time to file motion for rehearing was also filed.

3. On March 18, 2015, the court of appeals denied Daniel Alvarez' motion for rehearing.

# GROUNDS FOR REVIEW

1. The court of appeals erred by ruling that a conflict of interest is not proven where the un-refuted evidence establishes that an attorney undertaking the joint representation of co-defendants follows through with a plan and agreement he has made with one co-defendant to secure the dismissal of that co-defendant's case in exchange for inducing the other co-defendant to plead guilty

2. The test for ineffective assistance test the court of appeals adopted in this case misstates the test adopted by the U.S. Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335 (1980)

## ARGUMENT

1. **By ruling that a conflict of interest is not proven where the un-refuted evidence establishes that an attorney who has undertaken the joint representation of co-defendants follows through with a plan and agreement he has made with one co-defendant to secure the dismissal of that co-defendant's case in exchange for inducing the other co-defendant to plead guilty, the court of appeals has decided a case which conflicts with the Supreme Court decision in *Dukes v. Warden*, 406 U.S. 250 (1972)**

Police reports prepared in connection with this case reflect that on November 21, 1996, Applicant Daniel Alvarez was arrested while operating a 1986 Oldsmobile motor vehicle on Lee Trevino Drive in El Paso County, Texas. *CR 9.* Although the police reports do not so indicate, Alvarez was not the owner of the 1986 Oldsmobile vehicle stopped by the police. *Id.* Another male individual found inside the vehicle with Alvarez at the time the traffic stop was made identified himself as Julian Jicalan Lopez, with a date of birth of January 10, 1975. *Id.* At the time of the traffic stop, a vehicle search of the motor vehicle Alvarez was driving, at which time approximately 10 grams of cocaine was allegedly seized from inside the dashboard of the vehicle Alvarez and Lopez occupied. *Id.* These reports indicate that this cocaine was not in plain view, but well-hidden from view. *Id.*

Daniel Alvarez ("Alvarez") was indicted under the name he was arrested on November 21, 1996 for possession of cocaine, more than 4 grams but under 200 grams. *CR 10; CR 114.* With his Attorney Barraza as his attorney, he pled guilty to

this charge. Co-defendant Julian Jicalan Lopez was later indicted under the name Santiago Jicalan Sanchez under cause number 970D03234, after the defendant's true name was discovered to be different than that of the name he gave at the time of his arrest. *Id.* After Sanchez was indicted for the offense of possession of more than 4 grams and under 200 grams in cause number 970D03234, nothing transpired in Sanchez' case until on or about September 25, 2002, when the indictment in this cause was served on Sanchez while in jail). *Id.* On October 29, 2003, an order was issued dismissing the charge against Sanchez. *Id.*

The express attorney-client legal services agreement reached between Attorney Barraza and Sanchez was that Sanchez would pay Attorney Barraza the attorney's fees necessary to defend both Alvarez and Sanchez on the pending cocaine possession charge they were arrested for on November 21, 1996. *Id.* Co-defendant Sanchez confirmed the existence of this agreement by providing an affidavit wherein he stated that he paid Attorney Barraza to represent both Applicant Alvarez and himself on the November 21, 1996 cocaine possession charge. *Id.; CR 116.*

While Alvarez was aware that Attorney Barraza had been paid by co-defendant Santiago Sanchez, he was not aware that co-defendant Sanchez had agreed, in exchange for this fee, to attempt to secure a more favorable outcome of the case for Sanchez. *CR 11; CR 115.* Specifically, Alvarez was unaware that the agreement

Attorney Barraza reached with Sanchez was that he would attempt to secure a community supervision sentence for Alvarez and a dismissal of his case. Attorney Barraza lived up to his agreement with co-defendant Santiago Sanchez. *Id.* Not only did he, as Alvarez' trial counsel, negotiate a community supervision sentence for Alvarez with the prosecutor; he also secured a dismissal of Sanchez' indictment on the same possession of cocaine charge. *Id.*

In the trial court below, co-defendant Sanchez provided a sworn affidavit in support of Alvarez' claim that Sanchez hired Attorney Barraza to represent both himself and Daniel Alvarez. *CR 141.* In his affidavit, Sanchez stated that the cocaine with which Barraza was accused of possessing belonged to him and that he hired Attorney Barraza to ensure that Alvarez took the "fall" for the offense. *Id.* Sanchez' affidavit further corroborated the claim made by Alvarez in his affidavit, that he in fact did lead Daniel Alvarez to believe that Attorney Barraza intended to defend him to the best of his ability, when in fact he and Barraza "had already agreed to have Daniel Alvarez plead guilty to the indicted charge so that the charge against him could later be dismissed." *CR 114-115; CR 141-142.*

The evidence at the writ hearing further established that Santiago Sanchez was the more culpable defendant. *CR 77-92.* Unlike Alvarez, Sanchez was identified early on in the investigation as a known drug addict and as a repeat offender under the

Repeat Offender Program. (*CR 77*). According to one member of the arrest team, Sanchez had previously been arrested for marijuana, unlike Alvarez. *CR 78.* On the date Sanchez and Alvarez were arrested, Sanchez apartment at 3328 Hayes, #13 was searched. CR 78-79. During the search, numerous bills of rolled currency were found in the apartment and seized as drug contraband. While search Sanchez' apartment, the officers also encountered a cocaine dealer known as Abraham Gaona who was inside the apartment when the search commenced. (*CR 78-79, 86)*.

The court of appeals below addressed Sanchez' claim that his conviction for possession of over four grams of cocaine should be vacated based on ineffective assistance by reason of the conflict of interest which resulted from Attorney Barraza's dual representation of Alvarez and Sanchez in the following manner:

> To be sure, there is some evidence of the existence of a true conflict of interest presented on the record. The allegation that attorney Manny Barraza accepted the representation of two persons with the intent to plead one to the detriment of the other is precisely the type of conflict alluded in *Dukes v. Warden*, 406 U.S. 250, 92 S.Ct 15551, 32 L.Ed.2d 45 (1972). In *Dukes*, one of several co-defendants represented by the same firm of attorney complained that his guilty plea was tainted by a conflict of interest. He had learned that his attorney when pleading out the co-defendants had tried to gain leniency for the other defendants by suggesting that he was the more culpable defendant. Id., 406 U.S. at 254, 92 S.Ct. at 1554. The court rejected the claim, but specifically referenced a finding of the lower court that there was no evidence that the attorney "inducted [Dukes] to plead guilty in furtherance of a plan to obtain more favorable consideration from the court for other clients." *Id*., 406 U.S. at 257, 92 Sct. At 1554.... There is, however, some evidence on this record of a plan to favor one defendant over the other. *Opinion*, pp. 12-13.

But in looking at this record, we are not directed to any evidence supporting the second *Cuyle*r predicate that the conflict had an adverse effect on specific instances of attorney Barraza's conduct. "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as "eliciting or failing to elicit evidence helpful to one [interest] but harmful to the other." *Gaston v. State*, 136 S.W.3d 315, 318 (Tex.App.–Houston [1ˢᵗ Dist.] 2004, pet. dismissed)....The only conduct of attorney Barraza reflected by the evidence in the record was the plea bargain itself. There is no evidence of how the terms of the plea was reached, such as negotiations behind the plea. There is no evidence that he took any specific action to use the terms of Alvarez' plea to gain some particular concession for Jicalan Sanchez (aka Jicalan Lopez). There is no evidence of the investigation that Barraza may or may have not have undertaken to develop a defense, particularly as to the cocaine found in his house and on his person. We acknowledge that the indictment and plea occurred almost fifteen years before the Application was filed, but Alvarez still bore the burden to present some evidence of each element of his claims. *Opinion*, p. 13.

In *Dukes v. Warden*, 406 U.S. 250 92 S.Ct 1551, 32 L.Ed.2d 45 (1972), the petitioner complained that an attorney from the same law firm representing him who was representing two female defendants had placed the primary blame on him as the primary culpable party for the females conduct during the sentencing of the two females in their cases. The United States Supreme Court rejected this claim. 406 U.S., at 256. It instead adopted the Connecticut Supreme court's analysis of the conflict of interest claim presented, to wit: "[Petitioner] does not claim, and it is nowhere indicated in the finding, nor could it be inferred from the finding, that either Attorney Zaccagnino or Attorney Delaney induced [petitioner] to plead guilty in

furtherance of a plan to obtain more favorable consideration from the court for other clients." Petitioner has made such a showing in this case.

In his writ application, Petitioner Daniel Alvarez demonstrated that his trial counsel, Attorney Manuel Barraza, entered in an agreement with Santiago Sanchez which was detrimental to him. Pursuant to their contractual agreement, Santiago Sanchez agreed to pay the fee to have Attorney Barraza represent both Daniel Alvarez and him (Sanchez) on the same possession of cocaine charge they had been arrested for if Attorney Barraza promised to secure a dismissal of his case in exchange for pleading Alvarez to the cocaine possession charge. Alvarez filed a sworn allegation which established that on the date he entered his guilty plea he "unaware of the conflict of interest rules and that an attorney should not represent two co-defendants charged with the same offense." *CR, at 115.* Alvarez further demonstrated in a sworn affidavit that he was unaware of the specific agreement co-defendant Sanchez had made with Attorney Barraza whereby Attorney Barraza was to secure Alvarez' guilty plea to the cocaine charge in exchange for securing a dismissal for Sanchez on the same cocaine possession charge.

Attorney Barraza complied with this part of the agreement by securing a guilty plea by Alvarez to the cocaine possession charge and securing a dismissal for Sanchez as to this same charge. Based on the evidence presented by Alvarez in his

writ application, it can therefore be inferred that Attorney Manuel Barraza induced

Daniel Alvarez to plead guilty in exchange for his promise to secure a dismissal for

co-defendant Santiago Sanchez. Based on the holding in *Dukes v. Warden*, supra, the

court of appeals erred in ruling that Daniel Alvarez did not make a sufficient showing

that Attorney Barraza's joint representation of Sanchez and him resulted in an actual

conflict of interest which deprived Alvarez of effective assistance of counsel. This

Court should therefore grant review of this point for review.

**2.     The ineffective assistance test adopted by the court of appeals in this case conflicts with and misstates the test adopted by the U.S. Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335 (1980)**

The court of appeals correctly cites to footnote 52 of the Texas Court of

Criminal Appeals' decision in *Ex parte McFarland*, 163 S.W.3d 743, 759 (Tex.

Crim.app. 2005) as establishing that "The *Cuyler* analysis has two elements: The

applicant must demonstrate that (1) defense counsel was burdened by an actual

conflict of interest; and (2) the conflict had an adverse effect on specific instances of

counsel's performance." However, this Court of Criminal Appeals decision in *Ex

parte McFarland, supra,* incorrectly sets forth the *Cuyler* standard.

In *Cuyler*, the United States Supreme Court held that "In order to establish a

violation of the Sixth Amendment, a defendant who raised no objection at trial must

demonstrate that an actual conflict of interest adversely affected his lawyer's

performance." See *Cuyler v. Sullivan*, 446 U.S. at 348-349. For the court of appeals to require a writ applicant like Alvarez to show under the second prong of *Cuyler* that the actual conflict of interest had an adverse effect on specific instances of counsel's performance is different than requiring the writ applicant to prove that the "actual conflict adversely affected the lawyer's performance." In fact, a proper reading of Cuyler lead to the conclusion that only an actual conflict must be shown to warrant reversal of a defendant's conviction. See *Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981) (holding that 'we believe a close examination of the opinion as a whole indicates that the Supreme Court did not intend to establish a standard requiring proof of adverse effect on counsel in addition to proof of an actual conflict of interest."

The test adopted by the court of appeals test is thus much more stringent than that created in *Cuyler*. Under the court of appeals' analysis, an attorney's performance can only for specific instances of the attorney's performance (i.e. affirmative conduct). As worded, the "conflict of interest" test created in *Cuyler*, supra, encompasses not only that specific instances of the attorney's performance be considered, but specific instances where the attorney failed to act on behalf of the client. Thus, the court of appeals in Alvarez' case thus misapplied *Cuyler* based on

a footnote taken from *Ex parte McFarland*, supra.[1]  It may be that the Court of Criminal Appeals applied *Cuyler* test the way it did based on the facts and circumstances of *Ex pare McFarland*, supra.  But for the court of appeals to revise the *Cuyler* test under the facts  of Alvarez' case was clearly improper.

Alvarez was found guilty pursuant to a guilty plea – rather than a trial. Therefore, unlike cases resolved by a contested trial, it is difficult to ascertain exactly what Attorney Barraza's thought processes or what his strategy was. This is because the evidence needed to demonstrate what his though processes were or his trial strategy does not appear in the transcript of Alvarez' guilty plea.  The kind of evidence which will often manifest itself does not exist in this case because Alvarez' case never went to trial.  For this reason, the failure of Alvarez' attorney to act (i.e. his  omissions) should not have bee disregarded in conducting a conflict analysis. Attorney Barraza may have  been able to plead Alvarez to a lesser charge or obtained dismissal of his cocaine possession charge in exchange for convincing Alvarez to cooperate as a witness for the Government against co-defendant Santiago Sanchez. See e.g. *Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981) (recognizing that an actual

---

[1]Petitioner bases this contention on the Court of Criminal Appeals' decision in *Routier v. State*, 112 S.W.3d 554 (Tex. Crim. App. 2003). There, it held that where the *Culyer v. Sullivan* standard applies, "to obtain relief, the appellant must show that (1) an actual conflict of interest existed, (2) which affected [the trial attorney's] representation of the appellant." *Id.*, at 584. No mention is made of proof having to be made that the conflict had an adverse effect of specific instances of the attorney's performance, as in Alvarez' case.

conflict exists where the possibility that one co-defendant can benefit from a cooperation agreement with the government).

As the more culpable party, reaching an agreement with the State to prosecute Sanchez, a repeat criminal offender, on the cocaine possession charge. This would have been a very viable strategy which Attorney Barraza could have pursued, but for the conflict of interest with which he was confronted. Another strategy Attorney Barraza could have employed would have been to shift the blame for the offense on Santiago Sanchez during trial. See e.g. *United States v. Mers*, 701 F.2d 1321 (11th Cir. 1983). This strategy was viable, given Sanchez' prior convictions as a repeat offender and on the evidence that he was the money person behind the cocaine possession offense of which both he and Alvarez were indicted. But Attorney Barraza could not have pursued this strategy at the time Alvarez case was before him because this would have required Attorney Barraza to implicate co-defendant Sanchez, when he had expressly agreed to secure a dismissal of the cocaine possession charges brought against Sanchez.

The court of appeals therefore erred in treating Attorney Barraza's failure to pursue these viable defense and trial strategies as inconsequential based on its belief that Alvarez could not demonstrate that the conflict had an adverse effect on specific instances of his attorney's performance. *United States v. Salado*, 339 F.3d 285 (2003).

It also failed to recognize the well established rule "that when counsel is confronted with an actual conflict of interest, prejudice must be presumed, and except under the most extraordinary circumstances, the error cannot be considered harmless." *Turnquest v. Wainright*, 651 F.2d 331, 334 (5th Cir. 1981). This rule is particularly applicable to the guilty plea context, where an attorney can in effect hide the conflict of interest much better than in the trial setting. Moreover, an attorney's conflict should not be excused merely because he has induced a co-defendant to plead guilty in order to avoid the conflict which will necessarily manifest itself if he is forced to continue forward and defend that client in a contested jury trial. See *Baty v. Balkcom*, supra. 661 F.2d at 397 (5th Cir. 1981). The court of appeals limited analysis to inquiring whether "the conflict had an adverse effect on specific instances of counsel's performance" thus distorts the ruling and analysis provided by the Supreme Court in *Cuyler v. Sullivan*, supra. As noted above, this test for determining whether an actual conflict of interest actually exists, as set out in *Cuyler v. Sullivan*, supra, is much broader. For this reason, review of this point should be granted.

## PRAYER

For all of the reasons stated above, the Court of Criminal Appeals should grant this petition on both points for review identified and order briefing.

Respectfully submitted,

/s/ _James D. Lucas_
JAMES D. LUCAS
Attorney for Appellee
2316 Montana Avenue
El Paso, Texas 79903
Tel. (915) 532-8811
Fax (915) 532-8807
SBN 12658300

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

This petition for discretionary review filed in support of thereof comply with the type-volume limitations of 9.4. It contain 3,283 words, excluding the parts of the brief exempted by 9.4(1); and this brief complies with the typeface requirements of 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Corel Word Perfect in Times New Roman, 14-point.

/s/ _James D. Lucas_
JAMES D. LUCAS

## CERTIFICATE OF SERVICE

I, James D. Lucas, hereby certify that on May 18, 2015, a true and correct copy of the foregoing document was served on the following by electronic means:

Hon. Jaime Esparza, District Attorney          State Prosecuting Attorney
500 East San Antonio                           P.O. Box 12405
El Paso, Texas 79901                           Austin, Texas 78711

/s/ _James D. Lucas_
JAMES D. LUCAS

**APPENDIX**

1- COURT OF APPEALS OPINION AND JUDGMENT



| | | |
|---|---|---|
| | § | No. 08-13-00025-CR |
| | § | |
| | | Appeal from |
| EX PARTE: DANIEL ALVAREZ | § | |
| | | 384th District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 960D10169-384-1) |
| | § | |
| | § | |

**O P I N I O N**

This is an appeal from a habeas corpus proceeding raising issues familiar to this Court. The trial court granted the Application for Writ of Habeas Corpus based on the belief that *Padilla v. Commonwealth of Kentucky*[1] applied retroactively to guilty pleas taken before *Padilla* was decided. A case from this Court supported that view at the time the Application was granted, but as noted below, subsequent decisions from the United Sates Supreme Court and Texas Court of Criminal Appeals have taken a different tact. Faced with this reality, Daniel Alvarez now falls back on a waiver argument and an alternate basis to affirm the trial court's decision. For the reasons stated below, we reverse the trial court's issuance of the Writ of Habeas Corpus.

---

[1] 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). *Padilla* requires defense counsel to advise defendants of the immigration consequences of a plea agreement if they could easily be determined from reading the federal removal statute. 559 U.S. at 368, 130 S.Ct. at 1483.

## FACTUAL SUMMARY

Daniel Alvarez pleaded guilty to possession of more than four grams, but less than 200 grams of cocaine on June 9, 1997. He was given deferred adjudication with five years of probation, a fine, and community service. Before admitting to the offense, the trial judge admonished him that "you can be deported if you plead guilty to that offense, and you can't return to the United States legally, [and] that any application you make for citizenship will be denied." Plea paperwork also contained his acknowledgment that: "I further understand that if I am not a citizen of the United States of America a plea of guilty or nolo contendere to this offense in this cause may result in my being deported, excluded from further admission into the United States, or denied naturalization under Federal law." Alvarez entered his plea and as far as the record shows, he successfully completed the term of that supervised release.

The possession charge grew out of these facts: an undercover police officer observed Alvarez driving a 1986 Oldsmobile which pulled up alongside another car to make what appeared to be an illegal drug sale. The officer followed Alvarez and witnessed several other suspected drug transactions. The police then followed Alvarez to his residence to identify where he lived. The undercover officer watched Alvarez for several weeks and observed him engaging in what appeared to be more drug deals, always using the Oldsmobile to make deliveries.

The police arranged with the City Sanitation Department to obtain the trash from Alvarez' residence. In his rubbish, they found plastic packaging with cocaine residue. Based on what they had learned, the police obtained a search warrant for the Oldsmobile and Alvarez' residence. When the warrant was executed at the residence, the police found a plastic baggie with 7.5 grams of what was later identified as cocaine in a shirt hanging in the closet. There were other people at the house at the time of the search, including Alvarez' wife.

2

The police executed the search warrant for the Oldsmobile by stopping the vehicle while Alvarez, and another person identified as Julian Jicalan Lopez, were driving around. A search of the vehicle turned up an additional amount of cocaine found in a plastic baggie in an air conditioner vent. Alvarez was then arrested and placed in the back of a patrol car. Another baggie of cocaine was found on the floorboard of the police cruiser where Alvarez was sitting. Jicalan Lopez had no identification when he was arrested. He was taken back to his apartment which he agreed could be searched. The search turned up a large amount of cash.

Both Alvarez and Jicalan Lopez were indicted on charges stemming from the possession and suspected sale of the cocaine. Alvarez was indicted for unlawful possession of a controlled substance in the Penalty Group I (Cocaine) exceeding 4 grams but less than 200 grams.

Jicalan Lopez, whose real name is Santiago Jicalan Sanchez, hired attorney Manny Barraza to defend both him and Alvarez. Jicalan Sanchez (aka Jicalan Lopez) executed an affidavit, submitted in this proceeding, which swore that he paid Barraza $15,000 to defend him and also paid $5,000 to Barraza to arrange for a guilty plea for Alvarez. His affidavit reads in part:

> I also paid Manuel Barraza $5,000.00 to plea Sr. Daniel Alvarez guilty and to obtain probation for him. By directing Attorney Barraza to plead Sr. Daniel Alvarez Manuel Barraza guilty to the cocaine possession charge, Attorney Barraza was able to get me deported with no charges, even though I had a prior arrest record. Attorney Barraza knew I was guilty of the charge because I explained the circumstances of the arrest to him and explained to him that the cocaine which had been seized from the vehicle belonged to me. However, I made it very clear to Attorney Barraza that I did not intend to plead guilty to the cocaine possession charge and wanted the case dismissed. It was explained to him that Sr. Daniel Alvarez would take the 'fall' for the offense. Attorney Barraza agreed to this arrangement and seemed to be satisfied, since I was the person paying for Sr. Daniel Alvarez' legal defense.

> While this was taking place, I led Sr. Daniel Alvarez to believe that Attorney Barraza intended to defend him to the best of his ability, when actually, Attorney Barraza and I had already agreed to have Sr. Daniel Alvarez plead guilty to the

3

indicted charge so the charge against me could later be dismissed. Sr. Daniel Alvarez, who had no knowledge of the cocaine in the vehicle, did not know that cocaine was inside the vehicle. Nevertheless, I arranged to have Attorney Barraza to work out a plea of guilty with the State so that I could be released from the charge.

As noted above, Alvarez pleaded guilty with Manny Barraza as his counsel. Jicalan Sanchez (aka Jicalan Lopez) apparently absconded only to be re-arrested in 2002 on other drug charges. The record indicates that he pled guilty to those other drug charges in 2003 and received a six year sentence to be served concurrently with a federal sentence. As a part of that plea deal, the 1997 charge was dismissed because Jicalan Sanchez (aka Jicalan Lopez) was "convicted in another cause." Manny Barraza was his counsel of record at the 2003 plea.

Unfortunately for Alvarez, who is a resident alien, the federal government considers his deferred adjudication to be a conviction for the purposes of removal. *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex.Crim.App. 2013)(state based deferred adjudications are still considered final convictions under federal immigration scheme). Consequently, Alvarez sought to undo his earlier guilty plea.

## PROCEDURAL SUMMARY

Alvarez filed his Application for Writ of Habeas Corpus on July 27, 2012. The Application raised two issues. First, Alvarez contended that his plea counsel did not properly advise him on the immigration aspects of the guilty plea, which we refer to as the *Padilla* ground. His second argument contends that his plea counsel, Manny Barraza, had a conflict of interest in that he represented two clients with divergent interests. We refer to this as the *Cuyler v. Sullivan*[2] or conflict of interest ground.

---

[2] 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Under *Cuyler,* a defendant can establish a violation of his Sixth Amendment right to the effective assistance of counsel if he can show "that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 350, 100 S.Ct. at 1719.

4

The trial court held a hearing on the Application on December 17, 2012.  Habeas counsel offered an affidavit from Alvarez, the affidavit of his co-defendant Jicalan Sanchez (aka Jicalan Lopez), and offered testimony from Alvarez' wife, Anabel Alvarez.[3]  Manny Barraza did not testify, in person or by affidavit.[4]

The trial court later granted the Application, vacating the 1997 guilty plea.  The court issued eight Findings of Fact and two Conclusions of Law.  The findings germane to the *Padilla* claim include:

Findings of Fact

.    .    .

6.  Attorney Barraza did not advise Alvarez of the immigration consequences of his guilty plea prior to June 9, 1997, the date Alvarez pled guilty.  Specifically, Alvarez was never advised that a plea of guilty to the offense of possession of more than 4 but less than 200 grams would subject him to deportation or removal from the United States.

Conclusions of Law

.    .    .

2.  Applicant Alvarez was deprived of effective assistance by Attorney Barraza's failure to inform Alvarez of the immigration consequences of his guilty plea to the cocaine possession charge.

The findings germane to Alvarez' *Cuyler v. Sullivan* conflict of interest claim include these:

Findings of Fact

.    .    .

4.  Shortly after Alvarez' arrest, the person then-known as Julian Jicalan Lopez retained Attorney Manuel Barraza to represent both Daniel Alvarez and himself

---

[3]  Counsel represented that Daniel Alvarez was confined at an "immigration camp" as of the date of the hearing.

[4]  We take notice that attorney Manny Barraza was convicted on June 1, 2010 of two counts of wire fraud, deprivation of honest services, making false statements, and he had been sentenced to five years in a federal prison.  *See* 75 TEX.B.J. 480-81 (June 2012).  On April 23, 2012 he was disbarred.  *Id*.

5

by paying Barraza $15,000.00 for his representation and $5,000.00 to represent Alvarez. The terms of this agreement were that Barraza would seek to obtain a probation sentence for Alvarez on the cocaine possession charge and secure a dismissal for Julian Jicalan Lopez on the same charge.

.    .    .

7. The Court finds that Attorney Manuel Barraza labored under an actual conflict of interest by representing both Alvarez and Sanchez in connection with the pending cocaine possession charge.

8. The Court finds that Attorney Barraza's dual representation of Alvarez and Sanchez had an adverse effect on specific instances of counsel's representation.

Under the heading "Conclusions of Law" appears a typewritten finding that "Applicant Daniel Alvarez was deprived of effective assistance of counsel by reason of Attorney Manuel Barraza's dual representation of both Alvarez and Sanchez on the same cocaine possession charge." There is a handwritten mark, which appears to be a strike-out, through this Conclusion of Law.

In response to a motion filed by the State, we issued an order directing the trial court to clarify what Findings of Fact and Conclusions of Law he relied upon to grant habeas corpus relief. In reply, the trial court issued a new set of findings on May 31, 2013 that are limited to only those original findings germane to the *Padilla* claim. The trial judge did not include *any* of his original findings, as set out above, which pertained to the *Cuyler v. Sullivan* conflict of interest claim.

The State appeals and raises two issues. In Issue One, the State argues that *Padilla* cannot be applied retroactively. In Issue Two, the State argues that even if the rule applied retroactively, Alvarez failed to show any prejudice.

**STANDARD OF REVIEW**

As the applicant for the Writ of Habeas Corpus, Alvarez was obliged to prove his allegations by a preponderance of the evidence. *Kniatt v. State,* 206 S.W.3d 657, 664

6

(Tex.Crim.App. 2006). In reviewing the trial court's decision to grant or deny relief on the Application, we review the facts in the light most favorable to the trial court's ruling and uphold it absent an abuse of discretion. *Ex parte Peterson,* 117 S.W.3d 804, 819 (Tex.Crim.App. 2003). Reviewing courts should afford almost total deference to a trial judge's determination of the historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Ex parte Peterson,* 117 S.W.3d at 819 n.67. When dealing with mixed questions of law and fact, we give the same level of deference if the resolution of those questions turn on an evaluation of credibility and demeanor, and review *de novo* those mixed questions of law and fact that do not depend upon credibility and demeanor. *Id.* at 819.

The reviewing court should affirm as long as the decision is correct on any theory of law applicable to the case. *Ex parte Primrose,* 950 S.W.2d 775, 778 (Tex.App.--Fort Worth 1997, pet. ref'd); *see, e.g., Devoe v. State,* 354 S.W.3d 457, 469 (Tex.Crim.App. 2011)(stating that appellate court will not disturb trial court's evidentiary ruling if ruling is correct on any theory of law applicable to ruling, even if trial court gave wrong reason for correct ruling); *Mahaffey v. State,* 316 S.W.3d 633, 637 (Tex.Crim.App. 2010)(holding that State could permissibly make new argument in support of trial court's ruling for first time on appeal because "an appellate court will uphold the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case'") *quoting State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

### *PADILLA* ISSUE

Alvarez asserted below that he was denied effective assistance of counsel because his attorney failed to apprise him of the immigration implications of his decision to plead guilty.

7

The Sixth Amendment to the U.S. Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment guarantees *reasonably effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984); *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App. 1997). To prove his plea was involuntary because of ineffective assistance, Alvarez must show (1) counsel's representation/ advice fell below an objective standard and (2) this deficient performance prejudiced the defense by causing him to give up his right to a trial. *See Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex.Crim.App. 1997).

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland. Hernandez v. State,* 726 S.W.2d 53, 56-57 (Tex.Crim.App. 1986). Under the *Strickland* test, an applicant must show that counsel's performance was "deficient," and that the "deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App. 2000).

In the context of Alvarez' claim, the Supreme Court has held that the Sixth Amendment requires a criminal defense attorney to inform his client of the risk of automatic deportation as a result of his guilty plea. *Padilla v. Kentucky,* 559 U.S. 356, 368-69, 130 S.Ct. 1473, 1483, L.Ed.2d 284 (2010); *State v. Guerrero,* 400 S.W.3d 576, 587 (Tex.Crim.App. 2013). The *Padilla* decision issued on March 31, 2010. *Padilla*, 559 U.S. at 356, 130 S.Ct. at 1473. When Alvarez's application was originally heard by the trial court, it was an open question as to whether *Padilla* applied retroactively to those cases where the plea was taken before *Padilla* was handed down. A decision of this Court had held *Padilla* should be applied retroactively. *Ex*

8

*parte De Los Reyes*, 350 S.W.3d 723, 729 (Tex.App.--El Paso 2011), *rev'd*, 392 S.W.3d 675 (Tex.Crim.App. 2013).  But soon thereafter, the retroactivity issue was resolved against Alvarez, both by the United States Supreme Court and the Texas Court of Criminal Appeals.  *Chaidez v. United States,* ___ U.S. ___, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013); *Ex parte De Los Reyes,* 392 S.W.3d 675, 679 (Tex.Crim.App. 2013).

The Texas Court of Criminal Appeals has further clarified that while normally an order of deferred adjudication is not considered a final conviction for state law, it is for the purposes of federal immigration law.  *State v. Guerrero,* 400 S.W.3d at 587-88.  For purposes of a *Padilla* analysis, a final conviction occurs at the time a defendant pleaded guilty and was placed on deferred adjudication.  *Id.*  Thus, if an Applicant made their plea before March 31, 2010 when *Padilla* was handed down, the failure of trial counsel or the trial judge to inform a defendant of the deportation consequences of the guilty plea does not entitle the defendant to habeas corpus relief.  *Guerrero,* 400 S.W.3d at 588.

In this case, it is undisputed that Alvarez's guilty plea, and even his completed term of deferred adjudication, occurred long before *Padilla* was decided.  The trial court would have abused its discretion in not applying pre-*Padilla* law.  *See Ex parte Sudhakar,* 406 S.W.3d 699, 702 (Tex.App.--Houston [14th Dist.] 2013, pet. ref'd).  Under that law, the Sixth Amendment right to counsel does not extend to "collateral" consequences of a prosecution.  *Ex parte Morrow,* 952 S.W.2d at 536.  Deportation is a collateral consequence of a prosecution. *Hernandez v. State,* 986 S.W.2d 817, 821 (Tex.App.--Austin 1999, pet. ref'd), *citing State v. Jimenez,* 987 S.W.2d 886, 888-89 (Tex.Crim.App. 1999).  Consequently, Alvarez' plea was not deficient because of any failure of his trial counsel to warn him about the immigration consequences of his plea. *See Ex parte Sudhakar,* 406 S.W.3d at 702.

Alvarez' sole response to this seismic shift in the case law against him is to argue that the State waived the point. He contends that by failing to obtain an explicit ruling from the trial judge on the retroactivity issue, the State cannot raise it now. We disagree.

Generally to preserve error a the party must "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State,* 827 S.W.2d 907, 908-09 (Tex.Crim.App. 1992); TEX.R.APP.P. 33.1. The record in this case is clear that the State raised the question of retroactivity below. The State devoted fifteen pages of its response to the Application outlining the retroactivity issue, including alerting the trial court that the U.S. Supreme Court had accepted the petition for certiorari in *Chaidez*, and that the Texas Court of Criminal Appeals had granted the petition for discretionary review in *De Los Reyes*. At the hearing on the Application, the State restated its position that it did not believe that *Padilla* should be applied retroactively, but conceded that the trial court might be bound by this Court's opinion in *De Los Reyes*. When the trial court granted the Application, it necessarily overruled the State's retroactivity arguments. We find no waiver on this record.

**CONFLICT OF INTEREST ISSUE**

In his brief, Alvarez appears to argue that the trial court's ruling can alternatively be upheld on his *Cuyler v. Sullivan* conflict of interest ground that was originally raised in his Application, but not accepted by the trial court. Alvarez contends that he obtained sufficient findings of fact to allow this Court to sustain the writ on that alternate ground. The State did not favor us with a reply brief to respond to this contention.

While most ineffective assistance of counsel claims are resolved applying the *Strickland* test, when the underlying failing of trial counsel involves a conflict of interest, a different

10

analysis applies. Conflict of interest claims for which no objection was timely made at the original trial or plea are analyzed under *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *Acosta v. State,* 233 S.W.3d 349, 356 (Tex.Crim.App. 2007); *James v. State,* 763 S.W.2d 776, 778-79 (Tex.Crim.App. 1989). The *Cuyler* analysis has two elements. The applicant must demonstrate that (1) defense counsel was burdened by an actual conflict of interest; and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Ex parte McFarland,* 163 S.W.3d 743, 759 n.52 (Tex.Crim.App. 2005); *Pina v. State,* 29 S.W.3d 315, 317 (Tex.App.--El Paso 2000, pet. ref'd).

Joint representation does not automatically create an actual conflict of interest. *See Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)(explaining that joint representation is not per se ineffective assistance); *James,* 763 S.W.2d at 778 (same). An actual conflict of interest exists when "one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *James,* 763 S.W.2d at 779. However, the failure to emphasize the culpability of one defendant over the other does not create an actual conflict. *Kegler v. State,* 16 S.W.3d 908, 913 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd); *Howard v. State,* 966 S.W.2d 821, 827 (Tex.App.--Austin 1998, pet. ref'd).

To meet the second *Cuyler* test--showing an adverse effect--an Applicant must demonstrate that some plausible defense strategy or tactic might have been pursued, but was not, because of the conflict of interest. *Ramirez v. State,* 13 S.W.3d 482, 487 (Tex.App.--Corpus Christi 2000), *pet. dism'd, improvidently granted,* 67 S.W.3d 177 (Tex.Crim.App. 2001). If the Applicant shows both elements, then prejudice is presumed. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052; *Mitchell v. State,* 989 S.W.2d 747, 748 (Tex.Crim.App. 1999).

11

Our first hurdle in analyzing this claim is that the trial court, while agreeing with some of the predicates of the argument, rejected its conclusion. The trial judge originally made findings that Manny Barraza labored under an actual conflict of interest that had "an adverse effect on specific instances of counsel's representation." But the trial court affirmatively struck through a proposed finding that the conflict denied Alvarez effective assistance of counsel. In response to this Court's order, the trial court clearly indicated the conflict of interest findings did not inform his decision to grant the writ.[5]

Even if the earlier findings of fact were meant to survive the newer issued findings, we would be inclined to view them as insufficient to sustain a *Cuyler* type challenge. To be sure, there is some evidence of the existence of a true conflict of interest presented on the record. The allegation that attorney Manny Barraza accepted the representation of two persons with the intent to plead one to the detriment of the other is precisely the type of conflict alluded in *Dukes v. Warden,* 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). In *Dukes,* one of several co-defendants represented by the same firm of attorneys complained that his guilty plea was tainted by a conflict of interest. He had learned that his attorney when pleading out the co-defendants had tried to gain leniency for the other defendants by suggesting that he was the more culpable defendant. *Id.,* 406 U.S. at 254, 92 S.Ct. at 1554. The court rejected the claim, but specifically referenced a finding of the lower court that there was no evidence that the attorney "induced [Dukes] to plead guilty in furtherance of a plan to obtain more favorable consideration from the court for other clients." *Id.,* 406 U.S. at 257, 92 S.Ct. at 1554; *James*, 763 S.W.2d at 784

---

[5] We note that the trial judge signed the order with the new Findings of Fact and Conclusions of Law on May 31, 2013 which was after the United States Supreme Court decided *Chaidez* and the Texas Court of Criminal Appeals decided *De Los Reyes,* ending the retroactivity debate in Texas, and thus effectively undermining the only rationale for his decision. Had the trial court had any belief that the conflict of interest issue had merit, we would have thought he would have included it in his findings at that time.

12

(Clinton, J., concurring)(noting this distinction drawn in *Dukes*). There is, however, some evidence on this record of a plan to favor one defendant over the other.

But in looking at this record, we are not directed to any evidence supporting the second *Cuylar* predicate that the conflict had an adverse effect on *specific instances* of attorney Barraza's conduct. "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as 'eliciting (or failing to elicit) evidence helpful to one [interest] but harmful to the other.'" *Gaston v. State,* 136 S.W.3d 315, 318 (Tex.App.--Houston [1st Dist.] 2004, pet. struck)(en banc), *quoting Ramirez v. State,* 13 S.W.3d 482, 488 (Tex.App.--Corpus Christi 2000, pet. dism'd). The trial court's original findings contain the relevant language from *Cuyler*, but offer no clue as to what specific instances of conduct were adversely affected. *See Ex parte Flores*, 387 S.W.3d 626, 634 (Tex.Crim.App. 2012)(a trial court's findings of fact and conclusions of law should do more than more than restate the parties' arguments). The only conduct of attorney Barraza reflected by the evidence in the record was the plea bargain itself. There is no evidence of how the terms of the plea was reached, such the negotiations behind the plea. There is no evidence that he took any specific action to use the terms of Alvarez' plea to gain some particular concession for Jicalan Sanchez (aka Jicalan Lopez). There is no evidence of the investigation that Barraza may or may not have undertaken to develop a defense, particularly as to the cocaine found in his house and on his person. We acknowledge that the indictment and plea occurred almost fifteen years before the Application was filed, but Alvarez still bore the burden to present some evidence of each element of his claims.[6]

---

[6] We note that the Texas Court of Criminal Appeals has recently referenced the consequence of the potential loss of evidence when habeas applications involve pleas and convictions occurring many years in the past. *Ex parte Smith,* 444 S.W.3d 661, 666 (Tex.Crim.App. 2014). The court has now specifically authorized habeas courts to *sua sponte* raise the issue of laches, looking in part to the prejudice occasioned by reconstructing events long past. *Ex parte*

In the cases where a conflict of interest was found, the courts could identify in the record specific instances of attorney conduct affected by the conflict. *Holloway,* 435 U.S. at 480, 98 S.Ct. at 1176 (counsel unable to ask one co-defendant questions on the stand due to confidential information imparted from co-defendant); *Ex parte Acosta,* 672 S.W.2d 470, 473-74 (Tex.Crim.App. 1984)(decision to have defendant testify); *Ex parte McCormick,* 645 S.W.2d 801, 804 (Tex.Crim.App. 1983)(decision to oppose separate trials and use of confessions); *Ex parte Parham,* 611 S.W.2d 103, 105 (Tex.Crim.App. 1981)(advice given to one defendant about testifying); *James,* 763 S.W.2d at 778 ("In each of these cases the potential for conflict inherent in multiple representation became an actual conflict due to the inculpatory or exculpatory nature of testimony or the strategy adopted by defense counsel in the particular case. That is not reflected in the case before us today."). We simply find none of these types of specific actions developed in the record that would support the second *Cuyler* finding, even under our highly deferential standard of review.

And while we recognize that a conflict of interest may implicate not only what an attorney does, but what he fails to do, *Holloway,* 435 U.S. at 489-90, 98 S.Ct. at 1181, we do not find any specifics of Barraza's conduct, other than attending a plea hearing in this record. Nothing suggests there was any other viable defense strategy that he could have pursued, or action that he could have taken on Alvarez' behalf.[7]

---

*Bowman*, NO. PD-1375-14, ___ S.W.3d ___, 2014 WL 6464635 (Tex.Crim.App. Nov. 19, 2014); *Ex parte Smith,* 444 S.W.3d at 667.

[7] His habeas counsel argued at the hearing that Alvarez could have placed all the blame on Jicalan Sanchez (aka Jicalan Lopez) for the cocaine in the car, or his wife for the cocaine in his house, but habeas counsel's argument is not evidence. *Guerrero,* 400 S.W.3d at 586 (habeas counsel's statements not evidence and would not support findings).

14

We sustain Issue One and find Issue Two to be moot. The trial court's judgment is reversed and judgment is rendered denying the Application for Writ of Habeas Corpus. TEX.R.APP.P. 43.2(c).

January 28, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

15



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § | |
|---|---|---|
|  |  | No. 08-13-00025-CR |
|  | § | |
|  |  | Appeal from |
| EX PARTE:  DANIEL ALVAREZ | § | |
|  |  | 384th District Court |
|  | § | |
|  |  | of El Paso County, Texas |
|  | § | |
|  |  | (TC # 960D10169-384-1) |
|  | § | |

## J U D G M E N T

The Court has considered this cause on the record and concludes that there was error in the judgment. We therefore reverse the judgment of the court below and render judgment denying the Application for Writ of Habeas Corpus, in accordance with the opinion of this Court, and that this decision be certified below for observance.

IT IS SO ORDERED THIS 28TH DAY OF JANUARY, 2015.


ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

Print this page

# Envelope 5331560

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 05/18/2015 08:51:27 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | James Lucas |
| Firm Name | James D. Lucas |
| Filed By | James Lucas |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | James D. Lucas |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 8749747 |
| Order # | 005331560-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | PD 0149-15 |
| Comments | |
| Courtesy Copies | information@spa.texas.gov |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| | 05/19/2015 | The petition for discretionary review does not contain the identity of Judge, Parties |

| Other | 05:04:44 PM | and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for discretionary review. |
|---|---|---|

## Documents

| *Lead Document* | Ex Parte Daniel Alvarez PDR.pdf | [Original] |
|---|---|---|