[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15038
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cr-00032-RS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JACOBO FELICIANO-FRANCISCO,
a.k.a. Uriel Castillo-Ochoa,
a.k.a. KiKo,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 10, 2017)

Before TJOFLAT, HULL and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Defendant Jacobo Feliciano-Francisco appeals his convictions and sentences for (1) conspiring to kidnap and transport an individual to engage in prostitution, (2) kidnapping, (3) retaliating against a witness, (4) transporting an individual in interstate commerce for prostitution, and (5) coercing or enticing an individual to engage in prostitution. After review of the record and the parties' briefs, we affirm.

Defendant Feliciano-Francisco's convictions arose from his kidnapping of a woman who had escaped from, and testified against, members of a sex-trafficking ring that smuggled women from other countries into the United States and then forced them into prostitution to pay off their smuggling debt. As the parties are fully familiar with the factual background of this case, much of which is under seal in order to protect the victim, we need not recount it. Instead, we proceed directly to the issues raised by the defendant on appeal.

## I. TRIAL EVIDENCE

### A.    The Photographs

During trial, the government sought to admit certain photographs that it had recently discovered. The relevant photographs came from a rape kit examination performed on the victim the day after defendant Feliciano-Francisco kidnapped her. The photographs depict only scrapes and bruises the victim suffered while climbing out a bathroom window to escape Feliciano-Francisco.

Defendant Feliciano-Francisco argues (1) that the government violated the Federal Rules of Criminal Procedure by not disclosing the photographs until during the trial and (2) that the district court erred by admitting the photographs.

Because the defendant had admitted to the sexual activity with the victim, the rape kit was never processed and remained in the possession of the Hattiesburg, Mississippi Police Department. On the Saturday before trial, the prosecutors first learned of the existence of the rape kit photographs from the victim. The FBI subsequently obtained the rape kit, including the photographs, and the defendant received copies of the photographs on Tuesday—the second day of trial.

At that time, defendant Feliciano-Francisco's counsel objected to the admission of the photographs, but, after a recess and opportunity to review the case law, his counsel conceded (1) that the government complied with its discovery obligations and (2) that the photographs constituted cumulative proof and thus were not prejudicial. Feliciano-Francisco's counsel stated that he "still object[ed]" to the photographs but offered no other basis for excluding them. The district court overruled the objection, and the photographs were admitted into evidence during the victim's testimony.

Federal Rule of Criminal Procedure 16(a)(1)(F) requires the government to permit inspection of photographs of any physical examination if (1) the government has possession of the photographs, (2) the government's attorney

3

knows, or through due diligence should know, that the photographs exist, and

(3) the government intends to use the photographs at trial or the photographs are

material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(F). This Court will

only reverse a conviction because of a Rule 16 violation if the violation prejudices

the defendant's substantial rights. United States v. Chastain, 198 F.3d 1338, 1348

(11th Cir. 1999). Additionally, we review a district court's evidentiary rulings for

abuse of discretion. United States v. Lankford, 955 F.2d 1545, 1548 (11th Cir.

1992).

Because defendant Feliciano-Francisco's counsel conceded the bases for his

objection, the admission of the photographs appears to be reviewable for plain

error, if not as invited error. In any event, even under de novo review, we find no

Rule 16 violation because the photographs were not in the government's

possession but in the possession of local law enforcement. See United States v.

Brazel, 102 F.3d 1120, 1150 (11th Cir. 1997) (noting that possession of the

"government" does not normally extend to local law enforcement offices). When

the government learned that the photographs existed and that it did not have them,

the government obtained the photographs and soon thereafter gave them to defense

counsel, thereby complying with the obligations of Rule 16. See id.

Even if a discovery violation occurred, defendant Feliciano-Francisco has

not shown prejudice. As the district court noted and the record demonstrates, the

4

photographs are "not particularly graphic." Several witnesses, including the victim herself, testified about the injuries she suffered, which the photographs depicted. Two of those witnesses testified before the photographs even became an issue. The photographs were thus cumulative of other evidence presented at trial. See United States v. Quinn, 123 F.3d 1415, 1423 (11th Cir. 1997) (finding that admission of cumulative testimony did not prejudice substantial rights even if there was a discovery violation).

Defendant Feliciano-Francisco also has not shown that the photographs had any effect on his trial strategy. Feliciano-Francisco has not so much as suggested any way in which he would, or even could, have changed his trial strategy if he had received the photographs earlier. See United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987) (explaining that this Court determines the prejudice resulting from a discovery violation "by considering how the violation affected the defendant's ability to present a defense"). Feliciano-Francisco failed to demonstrate that he suffered prejudice from either the government's late-hour discovery of the photographs or the district court's decision to admit them. We thus find no Rule 16 violation and affirm the district court's decision to admit the photographs.

**B.     The Defense Witness**

At trial, defendant Feliciano-Francisco sought to present a defense witness whom he believed would provide exculpatory testimony.  This eyewitness was present at the house from which the victim escaped.

Defendant Feliciano-Francisco's counsel believed this witness's testimony would provide exculpatory evidence demonstrating that Feliciano-Francisco did not kidnap the victim.  This defense witness, however, intended (on the advice of her counsel) to invoke the Fifth Amendment privilege against self-incrimination in response to any questions by the government on cross-examination about her immigration status and about a previous inconsistent statement she gave to law enforcement.  The government objected because the witness's plan to invoke the Fifth Amendment prevented effective cross-examination.  The district court initially indicated that it was inclined to exclude the witness's testimony.

After a proffer of the witness's direct examination and cross-examination testimony, defendant Feliciano-Francisco asked the government to grant the witness use immunity for her testimony, so that she could testify and be cross-examined without invoking the Fifth Amendment privilege.  The government declined that request.

Thereafter, defendant Feliciano-Francisco agreed to a compromise offered by the government, whereby Feliciano-Francisco would call the witness to testify

6

on direct but the witness would still be subject to a full cross-examination by the government, at which time she could invoke the Fifth Amendment in front of the jury. Feliciano-Francisco made this agreement despite the district court's warnings about the witness's potential vulnerabilities on cross-examination and with the knowledge that the witness would be subject to full cross-examination by the government about her immigration status and prior inconsistent statement.

With this compromise agreement in place, the witness testified that the victim came to the house with defendant Feliciano-Francisco and, soon after arriving, used Feliciano-Francisco's telephone to make a call. The witness also testified that Feliciano-Francisco then went into his room, leaving the victim behind and unrestrained and did nothing to prevent her from leaving the house. According to the defense witness, the victim then began acting nervous and desperate and then went outside and came back inside three times before locking herself in the bathroom. The witness testified that she did not see the victim again, but the police soon arrived, and during this whole time Feliciano-Francisco remained in his room. On cross-examination, the defense eyewitness answered numerous questions about the facts of the case but invoked her Fifth Amendment right in response to eight questions.

On appeal, defendant Feliciano-Francisco argues that the district court erred by allowing the government to ask "potentially incriminating questions solely for

the purpose of allowing the jury to hear [the defense witness] invoke the Fifth Amendment." Feliciano-Francisco contends that if the government wanted to ask these questions, the government should have offered the witness use immunity.

Generally, it is improper to put a witness on the stand for the purpose of having the witness invoke her Fifth Amendment privilege against self-incrimination before the jury because doing so would invite the jury to draw an improper inference. See United States v. Lacouture, 495 F.2d 1237, 1240 (5th Cir. 1974)[1]; Bowles v. United States, 439 F.2d 536, 542 (D.C. Cir. 1970).

Defendant Feliciano-Francisco, however, agreed to allow the defense witness to testify, knowing the witness would invoke the Fifth Amendment privilege and allowing the jury potentially to draw an unfavorable inference against him. The district court otherwise likely would have excluded the witness from testifying at all. Feliciano-Francisco chose to accept those risks in order to have the jury hear the witness's more favorable testimony about how the victim was unrestricted in the house and able to leave.

The district court asked defense counsel if allowing the defense witness to testify, and be subject to full cross-examination, was acceptable. Defense counsel consulted with defendant Feliciano-Francisco and then approved that plan. The

---

[1] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

defense thus invited any error and review is precluded.  See United States v. Thayer, 204 F.3d 1352, 1355 (11th Cir. 2000).

More specifically, the invited error doctrine precludes a criminal defendant from making "an affirmative, apparently strategic decision at trial and then complain[ing] on appeal that the result of that decision constitutes reversible error."  United States v. Jernigan, 341 F.3d 1273, 1290 (11th Cir. 2003).  Defendant Feliciano-Francisco agreed to the government's proposal, accepted that the witness would be allowed to invoke the Fifth Amendment, and called the witness to testify.  Feliciano-Francisco, knowing the risks, made the strategic decision to do so because of the value he placed on the witness's exculpatory testimony about the victim being unrestrained and free to come and go.  The invited error doctrine thus precludes us from reviewing the district court's decision to allow the witness to testify and to invoke her Fifth Amendment privilege in response to portions of the government's cross-examination.

We do not have to rely solely on invited error, however, to affirm defendant Feliciano-Francisco's conviction.  Feliciano-Francisco also still has not shown that the district court committed any reversible error by allowing this defense witness to invoke the Fifth Amendment privilege against self-incrimination in front of the jury.

9

Generally, it is improper for either the government or the defense to call a witness for the purpose of having the witness invoke the Fifth Amendment privilege. See Lacouture, 495 F.2d at 1240. Such testimony has "dubious probative value and high potential for prejudice," and the district court has discretion to exclude it. Id. Indeed, "once the trial court has satisfied itself as to the validity of the witness's Fifth Amendment claim, it may, in its discretion, decline to place the witness on the stand for the purpose of eliciting a claim of privilege." United States v. Bowman, 636 F.2d 1003, 1013 (5th Cir. Unit A Feb. 1981).

Here, neither the government nor the defense called the witness with the purpose of eliciting a claim of privilege. The defense called the witness, and the witness did not invoke the Fifth Amendment during her direct testimony. Instead, during the government's cross-examination, this defense witness invoked the Fifth Amendment in response to questions about her immigration status and prior statements to law enforcement. The government did not call the witness to the stand in order to have her invoke the Fifth Amendment.

Furthermore, the district court did not have to allow this defense witness to testify at all. The district court, however, gave defendant Feliciano-Francisco what he wanted—the opportunity to present the witness's testimony on direct. This is not an instance in which the government built its case based on impermissible

10

inferences from a witness who invoked the Fifth Amendment, but one where the government sought only to impeach a defense witness.

Defendant Feliciano- Francisco also has not demonstrated undue prejudice from the district court's decision to allow this defense witness to testify on direct and to allow the government to cross-examine this witness on matters that caused her to invoke the Fifth Amendment.  Feliciano-Francisco was allowed a full direct examination, while the government had the opportunity to try to undermine the witness's credibility on subject matters related to her direct testimony.  The government asked about matters relevant to the testimony on direct and the witness's credibility about those subjects.  The government's questions were proper impeachment questions.  See United States v. Pilcher, 672 F.2d 875, 877 (11th Cir. 1982); Fed. R. Evid. 611(b).

Additionally, "defendants have no general constitutional right to demand immunity for their witnesses."  United States v. Barham, 625 F.2d 1221, 1226 (5th Cir. 1980).  The government was not required to request use immunity for this witness's testimony on cross-examination, and the district court could have declined to allow the witness to testify at all.

In a case "when, as here, defense counsel not only failed to object on behalf of the defendant, but in many instances actually acquiesced in the procedure" we are reluctant to find the government acted improperly.  Namet v. United States,

11

373 U.S. 179, 189, 83 S. Ct. 1151, 1156 (1963).  Moreover, defendant Feliciano-Francisco suffered no undue prejudice because the jury heard the exculpatory evidence that he wanted to present to the jury and because there was overwhelming evidence to allow the jury to disbelieve the defense witness, even without the defense witness invoking the Fifth Amendment.  Feliciano-Francisco has thus failed to demonstrate any reversible error in the district court's decision to allow this defense witness to testify and invoke the Fifth Amendment in front of the jury, and any error would be invited error anyways.

## II.  SENTENCING

On October 15, 2014, the district court sentenced defendant Feliciano-Francisco to a total sentence of life in prison.[2]  Feliciano-Francisco had a base offense level of 32 (for Counts 1, 2, and 3 grouped together).  He also received (1) a two-level increase under U.S.S.G. § 2A4.1(b)(3) for use of a dangerous weapon and (2) a six-level increase under U.S.S.G. § 2A4.1(b)(5) for sexual exploitation of the victim.  This resulted in a total offense level of 40.  Feliciano-Francisco's total offense level of 40 and criminal history category of I yielded a guidelines imprisonment range of 292 to 365 months.

---

[2]The district court imposed life sentences for Counts 1 and 2, a 240-month sentence for Counts 3 and 5, the statutory maximum, and a 120-month sentence for Count 4, also the statutory maximum, with all terms of imprisonment running concurrently.

## A.    The Offense Level Calculation

Defendant Feliciano-Francisco argues that the district court erred in its offense level calculations by applying the dangerous weapon and the sexual exploitation increases.[3]

When defendant Feliciano-Francisco and another, unknown man kidnapped the victim, the unidentified accomplice held his hands under his shirt and gestured as if he had a pistol.  This second man also threatened to harm the victim's family if she did not obey his commands.

Section 2A4.1(b)(3) of the Sentencing Guidelines provides for a two-level increase to the offense level "[i]f a dangerous weapon was used" during a kidnapping.  U.S.S.G. § 2A4.1(b)(3) (2014).  To be "used," a firearm must be either "discharged" or "otherwise used," which means that the conduct "was more than brandishing, displaying, or possessing a firearm."   U.S.S.G. §§ 2A4.1(b)(3), cmt. 2; 1B1.1, cmt. 1(I) (2014).  A "dangerous weapon" includes an object <u>used in a manner to create the impression the object was a dangerous weapon</u>, such as "wrapp[ing] a hand in a towel during a bank robbery to create the appearance of a gun."  U.S.S.G. § 1B1.1, cmt. 1(D) (2014) (emphasis added).

---

[3]We review the district court's legal interpretation of the Sentencing Guidelines <u>de novo</u> and the district court's factual findings for clear error.  <u>United States v. Cubero</u>, 754 F.3d 888, 892 (11th Cir. 2014).  We also review <u>de novo</u> the district court's application of the Sentencing Guidelines to the facts.  <u>Id.</u>

Defendant Feliciano-Francisco argues that no witness ever saw a gun and thus no conduct constituted more than brandishing or displaying a gun.  This Court, however, has "recognized that objects which appear to be dangerous weapons should be treated for sentencing purposes as if they actually were dangerous weapons."  United States v. Miller, 206 F.3d 1051, 1052 (11th Cir. 2000).  In addition, pointing or waving a weapon becomes more than brandishing or displaying the weapon when combined with an explicit threat.  Id. at 1054; see also United States v. Gordon, 19 F.3d 1387, 1388 (11th Cir. 1994) ("When a dangerous weapon is pointed at specific persons in order to intimidate those persons into following specific orders, such activity is more than mere 'brandishing' and constitutes use of the weapon for purposes of U.S.S.G. § 2A4.1(b)(3).").

Here, defendant Feliciano-Francisco's unidentified partner-in-crime used his hand and shirt to create the impression that he had a pistol pointed at the victim.  Feliciano-Francisco's partner-in-crime also threatened to harm the victim's family if she did not comply with his instructions.  Under our clear precedent, this action constitutes using a dangerous weapon during a kidnapping under § 2A4.1(b)(3).

The actions of this unidentified co-criminal are attributable to Feliciano-Francisco for sentencing purposes.  See United States v. Maddox, 803 F.3d 1215, 1220-22 (11th Cir. 2015) (per curiam) (concluding that a defendant could receive a

14

five-level increase for brandishing a weapon during a robbery when a co-defendant did the brandishing), cert. denied, 136 S. Ct. 852 (2016). The district court thus correctly applied § 2A4.1(b)(3) to increase Feliciano-Francisco's offense level.

Defendant Feliciano-Francisco also challenges the application of § 2A4.1(b)(5) of the Sentencing Guidelines to him. Section 2A4.1(b)(5) provides for a six-level increase to the offense level if the victim was sexually exploited during a kidnapping. U.S.S.G. § 2A4.1(b)(5) (2014). At the sentencing hearing, Feliciano-Francisco objected to the application of this guideline without providing any basis for doing so. He now argues that his sentence should be vacated because the district court did not set out findings supporting the application of the sexual exploitation increase. This argument is without merit.

The district court overruled the objection stating, about the sexual exploitation, that "there was evidence about that very terrifying aspect of this whole thing, so I think that's properly included." The district court also determined that the presentence report was accurate and incorporated its findings of fact, which included the finding that defendant Feliciano-Francisco forced the victim to perform oral sex on him. The district court set forth all of the necessary findings, and the trial evidence unquestionably demonstrated that Feliciano-Francisco sexually exploited the victim. Application of this six-level increase was thus proper.

## B.    The Substantive Reasonableness of the Sentence

Defendant Feliciano-Francisco contends that the district court's above-guidelines total sentence of life in prison is substantively unreasonable. We determine whether the imposed sentence was substantively unreasonable in light of the totality of the circumstances. United States v. Croteau, 819 F.3d 1293, 1309 (11th Cir. 2016), cert. denied, 137 S. Ct. 254 (2016). Feliciano-Francisco bears the burden of showing that the district court imposed an unreasonable sentence in light of the record and the factors set forth in 18 U.S.C. § 3553(a). Id. "[T]he district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a).[4] Id. The district court has discretion to weigh the various factors and to apply a variance, and we must give "due deference" to the district court's decision that the § 3553(a) factors justify the variance. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

Defendant Feliciano-Francisco argues that his advisory guidelines range already took into account all of the relevant factors. In support of his position, he points to the long length of his guidelines range, his age, and the fact that he would be subject to deportation or supervised release upon the end of his prison term.

---

[4]The relevant factors for sentencing include "the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public." Croteau, 819 F.3d at 1309. "The district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." Id.

16

At the sentencing hearing, the district court explained the reasoning for its above-guidelines sentence, as follows: (1) it "considers the cruelty, the seriousness, [and] the abject ill will toward another human" by defendant Feliciano-Francisco; (2) the guidelines range does not account for the "abject cruelty" with which the defendant acted in "his standard operating mode"; (3) a guidelines sentence would send the wrong message to others; (4) even a maximum guidelines sentence would release the defendant at a young enough age for him to repeat his crime; and (5) the guidelines do not address how the defendant "terrorize[d]" the victim over an extended period of time. The district court also noted that the facts of this case were "as terrifying as anything I have seen in terms of what humans are capable of doing to their fellow humans."

The government on appeal also points out a number of aggravating factors in this case for which the Sentencing Guidelines do not fully account: (1) defendant Feliciano-Francisco's crimes were in retaliation for the victim serving as a federal witness, who aided in obtaining the convictions of other members of Feliciano-Francisco's prostitution-ring; (2) the threats against the victim in the two weeks preceding her kidnapping; (3) although he had a criminal history category of I, Feliciano-Francisco was part of a larger organization that forced vulnerable women into prostitution; (4) Feliciano-Francisco presented no mitigation except for his low criminal history category; and (5) deterrence was especially important because

at least two other people involved in kidnapping the victim remained at large, and Feliciano-Francisco's organization, of which there were likely other members, could again attempt to retaliate against this victim or other potential witnesses.

Based on the reasons set forth by the district court and the government, we cannot say that the district court's sentence was substantively unreasonable.  The imposed life sentence properly took into account the § 3553(a) factors, including the need for deterrence, the desire to protect federal witnesses, and the severe cruelty of the offenses.

### III.  CONCLUSION

Based on the foregoing reasons, we affirm defendant Feliciano-Francisco's convictions and sentences.

**AFFIRMED.**